## Ex parte STRICKER.

### (Circuit Court, D. Kentucky. May 16, 1901.)

**1. CONSTITUTIONAL LAW—DUE PROCESS OF LAW—SUMMARY IMPRISONMENT FOR CONTEMPT.**

A person summarily adjudged guilty of contempt by a court without a hearing or the service upon him of any process, for an act not committed in the presence of the court, and imprisoned for nonpayment of the fine imposed, is deprived of his liberty without due process of law, in violation of the fourteenth amendment to the constitution of the United States.

**2. HABEAS CORPUS—FEDERAL COURTS—DISCHARGE OF STATE PRISONER.**

Where a person has been deprived of his liberty without due process of law by a state court, by being committed to jail for an alleged contempt not committed in the presence of the court, and without process or hearing, and the state laws give him no right of appeal, he is entitled to be discharged by a federal court on a writ of habeas corpus.[1]

On Petition for Writ of Habeas Corpus.

T. F. Hallam, M. M. Durrett, and Nat. Wright, for petitioner.

EVANS, District Judge. The petitioner, being confined in the jail of Kenton county, Ky., applied to this court for a writ of habeas

---

[1] Jurisdiction of federal courts, see note to In re Huse, 25 C. C. A. 4.

109 F.—10

corpus, alleging in his petition that he was thus confined in violation of the constitution and laws of the United States, and praying to be released. The jailer has certified the cause of the detention, and the facts appear to be as follows: Sidney G. Stricker is an attorney at law, who practices his profession at his home in Cincinnati, Ohio, and also in Covington, Kenton county, Ky. In January, 1901, he was retained as counsel for the respondent in the proceeding then pending in the Kenton circuit court for the disbarment of Theodore F. Hallam, an attorney of that court. He visited the Kenton circuit court on January 7, 1901, and was then informed by the clerk that the Honorable James P. Tarvin, the regular judge of that court, was absent in Illinois, and that from Chicago, in that state, he had sent the following telegram:

"Chicago, Ill., Jan. 7, 1901.

"To Rankin R. Revill, Circuit Court Clerk's Office, Covington, Ky.: Adjourn motion docket and jurors and all business until Tuesday, January 8th, 10 o'clock.                                   James P. Tarvin."

Pursuant to the demand of his client, however, the petitioner went to the clerk's office of the court, and requested the clerk to hold an election by the attorneys then present for the selection of a special judge, pursuant to the provisions of section 968 of the Kentucky Statutes, which section is in this language:

"When, from any cause, the judge of the circuit court fails to attend, or being in attendance, cannot properly preside in an action, proceeding or prosecution pending in said court, or if either party shall file with the clerk of the court his affidavit that the judge will not afford him a fair and impartial trial, or will not impartially decide an application for a change of venue, the parties, by agreement, may select one of the attorneys of the court to preside on the trial, or hear the application, or hold the court for the occasion; and on their failure to agree upon an attorney, the attorneys of the court who are present and not interested, nor employed in the cause, shall elect an attorney of the court then in attendance, having the qualifications of a circuit judge, to hold the court for the occasion, who shall preside accordingly, and the judge so selected shall preside in all cases called during the term in the absence of the regular judge, or in which he cannot preside, except in those cases in which the special judge cannot properly preside. The election shall be held by the clerk, and in case of a tie, he shall give the casting vote. The person elected shall, during the period that he acts, have all the powers and be subject to all the responsibilities of a circuit judge."

The clerk, though advised by his own counsel that it was his duty to hold an election for a special judge, declined, and the petitioner, as counsel for Hallam, filed a suit for a mandamus to compel him to do so. On Monday, January 14, 1901, the regular judge, having returned to Kentucky, proceeded to hear the case for the disbarment of Hallam, for whom the petitioner was present as counsel. The situation being thus, the judge, acting of his own motion, and in the midst of the trial of the Hallam case, sent for the clerk, and inquired of him who the Cincinnati attorney was who had appeared in his office the previous Monday, while the judge was absent in Chicago, and demanded the holding of an election for a special judge. Hearing this inquiry made, the petitioner, in a respectful and decorous manner, stated that he was the man. He was at once ordered to "sit down,"

which he did, and the case against Hallam proceeded until the noon hour, when, previous to taking a recess, the judge, without further proceedings, announced that "Sidney G. Stricker is fined $25 for contempt of court, and the sheriff will take said Stricker in custody until the fine is paid. Should said fine be not paid, the sheriff will place said Stricker in the custody of the jailer until the fine is paid."

The facts constituting the alleged offense for which the petitioner was thus fined were those above stated in reference to the attempt to elect a special judge in the absence of the regular judge, on January 7, 1901. No rule to show cause had been issued. No notice or summons had been served upon Stricker. No hearing was had, although the inquiry had been made of the clerk as above indicated, and, when the order imposing the fine was announced, the petitioner attempted to obtain a hearing, which was peremptorily refused, and the court, in doing so, ordered an immediate imprisonment if the fine was not at once paid, and remarked that he would "teach these Cincinnati attorneys that they cannot come over here and upset the orders of this court." The orders thus referred to were doubtless those which the judge had telegraphed from Chicago, Ill., directing the adjournment of the court and the continuance of all cases. In view of the positive rights conferred by the provisions of section 968 of the Kentucky Statutes, and of the case of Venhoff v. Morgan, 11 Ky. Law Rep. 276, there might have been a reasonable doubt of the right of the absent judge, unless there was entire acquiescence, to deprive litigants of the statutory privilege of having an election held for a special judge, especially if the attempt of the regular judge to prevent it was made by a telegram from outside of his territorial jurisdiction. It might be conceived that the clearly-bestowed statutory right of having a case tried by a special judge in the absence of the regular judge was superior to the power of the latter exercised from outside of the state of Kentucky, particularly where there had been an express demand for the statutory right. But we need not discuss these questions, in view of the grounds upon which it is conceived the decision of this case must rest.

Upon the admitted facts as stated above, it seems to the court that the petitioner should be discharged. If the learned judge who committed him to the jail had seen the acts done which he held to be a contempt of his court, and if those acts had been done in the presence and view of the court, his judgment upon them, however arbitrary or erroneous any other tribunal might have considered them to be, would have been final, and there would have been no ground for the interference of any other court, for the reason that in that event the practice and processes of the state of Kentucky in such proceedings would have been conformed to; it being the well-settled doctrine in the state, as elsewhere, that any court may punish summarily any contempt committed in its presence. But in the case before us an attorney, in due discharge of his obligations to a client, visited the Kenton circuit court while the regular judge thereof was in the city of Chicago, Ill., and in strict conformity to the laws of Kentucky, and in the absence of the regular judge, before the clerk of the court, insisted upon the selection, in the proper way, of a special judge to

try the case in which the petitioner was interested as counsel. For this act, thus done, while the regular judge was in a distant city and in another state, the judge, after his return, some days later, without anything which in any sense could be called a hearing, and without permitting the petitioner to have an opportunity to be heard, adjudged him to be guilty of a contempt of the court because of what he had thus done in the absence of the judge, and fined him therefor, and, the fine not being paid at once, sent him to jail. As will be seen, the act held to be a contempt of the court was not committed in the face of the court. If it had been so committed, no proof would have been needed to inform the court thereof; for the court, in that event, would have seen and known the facts, and, if they had constituted any offense, could doubtless have summarily punished the offender. But we take it that in all cases where the offense is not committed in facie curiæ, and where, to acquire information concerning the facts, the court must in some way hear evidence of the acts constituting the alleged offense, the accused is manifestly entitled to a hearing, and to an opportunity to be confronted with the witnesses against him, and also to a chance to have his own evidence heard and considered before he is condemned. Nothing of the kind was done in this case, but all such opportunities were positively refused to the petitioner, and he was fined and committed to the jail for an act done when the judge was outside of the state, and without even the slightest chance to be heard or to present testimony upon the charge.

It is altogether well settled that for contempts committed in its presence a court may summarily impose punishment. This is but the exercise of a power which must be inherent in every judicial tribunal in order to the administration of justice, the preservation of the dignity of the court, and the enforcement of decorum and good order. Summary proceedings in such cases have been pursued by the courts time out of mind, and manifestly constitute due process of law therein. Ex parte Terry, 128 U. S. 289, 9 Sup. Ct. 77, 32 L. Ed. 405; Ex parte Savin, 131 U. S. 267, 9 Sup. Ct. 699, 33 L. Ed. 150; Eilenbecker v. District Court, 134 U. S. 31, 10 Sup. Ct. 424, 33 L. Ed. 801; Ex parte Robinson, 19 Wall. 505, 22 L. Ed. 205; Arnold v. Com., 80 Ky. 300, 44 Am. Rep. 480; Am. & Eng. Enc. Law, tit. "Contempt." In such cases the acts constituting the contempt have been committed in the presence of the court, and are therefore judicially and actually known to it, without further investigation or inquiry, and it may act at once. But in cases where such acts are not committed in the presence of the court, or within its view, testimony must be heard to inform the court thereof, and the person accused of having committed them is entitled, before being punished therefor, to proper notice of the matters charged against him, and of the time and place for hearing the same. This notice usually takes the form of a rule to show cause, upon the return of which there is a full hearing. At all events, before a person can be condemned under these circumstances, he must be heard, or have an opportunity to be heard. Clay v. Quarter Sessions Court, Sneed, Dec. (Ky.) 189; U. S. v. Anonymous (C. C.) 21 Fed. 761. The reason for the distinction between the two classes of cases is entirely plain. In the one the court sees and knows of

all the acts which constitute the contempt, and needs no testimony to establish their existence as facts, while in the other testimony must be heard to inform the court, and, this being so, due process of law demands that this testimony should be heard publicly, in open court, and by both sides to the controversy, after due notice to the accused of what is alleged against him, in order that he may have an opportunity to meet and explain it.

The question before the court now is not whether the petitioner was in fact guilty of any contempt, but whether he has, by the state of Kentucky, through one of its courts, been deprived of his liberty and of his rights without due process of law, and whether in the way indicated he has been deprived of the equal protection of the law. The facts stated leave no doubt upon the mind of the court that the petitioner was denied the benefit of any process of law whatever. He had no hearing upon the charge. His voluntary response to an inquiry by the court, addressed to the clerk, as to who was the Cincinnati lawyer who had tried to have a special judge elected, was in no sense a hearing upon any charge of contempt, for no such charge was even then made. He was fined and sent to jail without having the slightest opportunity to state his side of the case, and about matters as to which the court could not be informed without hearing the testimony of third parties. If any testimony was offered in support of the charge of contempt, it was not heard in the presence of the petitioner. The practice and legal processes of Kentucky in no way warranted a judgment rendered upon this state of case, yet the petitioner was without any right of appeal to a higher court. Cr. Code Prac. § 347. If the law of Kentucky had afforded him an appeal from the judgment rendered against him this court would have left him to that remedy, but it does not, and a resort to the writ of habeas corpus seems to be essential. Boske v. Comingore, 177 U. S. 466, 20 Sup. Ct. 701, 44 L. Ed. 846.

Without going with any elaboration into the learning on the subject, the court contents itself with saying that the distinction pointed out between contempts committed in the presence of the court and those which were not seems to be the true one, and that it knows of no system of jurisprudence, which we are in the habit of respecting, which would uphold as due process of law the proceeding under which the petitioner in this case was incarcerated under the circumstances indicated. As already stated, there was no rule to show cause. No notice or summons was served upon the person accused, although "the essential elements of due process of law are notice and opportunity to defend." Simon v. Craft, 182 U. S. ——, 21 Sup. Ct. 836, 45 L. Ed. ——. Indeed, no charge was made until the penalty was being imposed. Nor was there a hearing, nor an opportunity to be heard, upon a charge of contempt, although that contempt was not committed in the presence of the court. On the contrary, there was a positive refusal to hear the petitioner or previously to inform him of what offense he was accused. Such a proceeding, upon the facts in this case, and which has resulted in the fine and imprisonment of the petitioner, cannot be considered to be due process of law, and yet they constitute the sole basis of the penalty inflicted upon him.

While any citizen may be deprived of his life, his liberty, or his property by the proper civil authorities of the state, he has the fullest right, under the constitution, to insist that this shall only be done by due process of law, and, speaking generally, the court must enforce this demand in every instance when appealed to in order to prevent any exercise of merely tyrannical and arbitrary power. The imprisonment of the petitioner was the act of the state of Kentucky, through one of her judicial officers, and, for the reasons indicated, was in violation and disregard of the provisions of section 1 of the fourteenth amendment to the constitution of the United States. Pennoyer v. Neff, 95 U. S. 733, 24 L. Ed. 565; Tinsley v. Anderson, 171 U. S. 101, 18 Sup. Ct. 805, 43 L. Ed. 91.

Summarizing, we may say that the general principles which must control the court, and which seem to be established by the cases cited, and many others of a similar character, are these, namely: First, that, as applied to judicial action, "due process of law" means a course of legal proceedings according to those rules and principles which have been established in our systems of jurisprudence for the protection and enforcement of private and personal rights; second, that there must not only be a tribunal competent to act, but that, where the action of a court involves the personal liberty of the defendant, he must, except in cases of actual contempts committed in the presence of the court, be brought within the jurisdiction of the court; third, that with that exception this can only be done by service of process upon him or by his voluntary appearance; fourth, that since the adoption of the fourteenth amendment to the constitution of the United States the validity of a judgment of a state court may be questioned, and its enforcement resisted upon the ground that proceedings in a court of justice to determine the personal rights of citizens over whom the court had acquired no jurisdiction do not constitute due process of law; fifth, that the equal protection of the law is denied by a state court when it is apparent that the same law or course of procedure would not and could not lawfully be applied to any other person in the state under similar circumstances; and, sixth, that in cases of urgency, and particularly where no appeal is allowed from such judgment by the laws of the state, the federal courts may, and indeed should, act upon the matter by means of the writ of habeas corpus, where imprisonment had been the result of the state court proceedings. See, also, cases cited in Tinsley v. Anderson, 171 U. S. 104, 105, 18 Sup. Ct. 807, 43 L. Ed. 96. This court has not had the least desire to interfere with or to control the conduct of any judge of any court in Kentucky. For some months it has sought to avoid any interference in this instance, but, when the question is at last forced upon it, it must decide it, or the constitutional guaranty to the citizen may have little value, at least to the petitioner. Upon the facts shown, the court is of opinion that the petitioner is in the custody of the jailer of Kenton county in violation of the constitution of the United States. For that reason, and because justice seems to require it, he is discharged.