EX PARTE E. J. RATLIFF.

No. 5041. Decided February 29, 1928.
(3 S. W., 2d Series, 406).

*Heilbron, Kilday & Howard,* for relator.

The court had no jurisdiction to enter the order adjudging the relator guilty of contempt, in that, the matters adjudged to have constituted contempt did not occur in the presence or hearing of the court, and no complaint, motion, affidavit or information was ever filed invoking the jurisdiction of the court. Ex Parte Foster, 71 S. W., 593; Ex Parte Landry, 144 S. W., 962; Ex Parte Duncan, 182 S. W., 313; Batchelder v. Moore, 42 Cal., 412; Whitten v. State, 36 Ind., 213; State v. Kaiser, 20 Oregon, 50, 23 Pac., 964, 8 L. R. A., 584; Ruling Case Law, Vol. 6, p. 533; Ex Parte Ireland, 38 Texas, 344; Ex Parte Kilgore, 3 Texas App., 247; Crow

v. State, 24 Texas, 12; Ex Parte O'Fiel, 246 S. W., 664; Ex Parte Lipscomb, 111 Texas, 409, 239 S. W., 1101.

*Davis & Wright,* for respondent.

The court was right in summarily punishing the relator because the relator filed in said civil suit in which he was defendant a sworn pleading claiming therein that he had sold the notes in controversy two days prior to the service upon him of the court's restraining order, and praying for that reason that said restraining order be dissolved. This claim of the relator was found by the court to be false. By filing this false sworn pleading and praying for such relief thereon, the relator invited the court to act upon the controversy in all its phases, and cannot now be heard to complain that he had no notice that one of its phases might be a judgment in contempt. It is presumed that every person intends to incur the natural consequences of their acts, and it was therefore necessarily within the contemplation of relator when he took the step in the law suit that he did, that one of those consequences would be a judgment in contempt, if the falsity of the claim was established upon the hearing.

Mr. Justice GREENWOOD delivered the opinion of the court.

Mrs. Clyde Marten brought suit against E. J. Ratliff in the Seventy-third District Court to cancel certain notes. She procured, on January 9, 1928, a temporary restraining order commanding Ratliff to desist from selling or disposing of the notes and to bring same into court pending final determination of the suit. Having denied under oath that he was the owner of the notes but specially averring that he had, on January 7, 1928, sold, endorsed, and delivered the notes to another, defendant Ratliff moved the court to dissolve the temporary restraining order. On the 4th day of February, 1928, following a hearing of the motion to dissolve, the court entered a judgment reciting the restraining order and reciting that since it appeared to the court *from the evidence adduced on the hearing of the motion to dissolve the restraining order* that the claim of defendant that he had sold, transferred, and delivered the notes prior to the institution of the suit was false, and that if such sale or transfer occurred it occurred subsequent to the service of the restraining order on the defendant, it was therefore ordered and adjudged that the defendant E. J. Ratliff was guilty of a contempt of the court, and that he pay to the Sheriff of Bexar County a fine of $100.00 as punishment for such contempt, and that he forthwith deliver the notes to the district clerk, and that in default of the im-

mediate payment of the fine and delivery of the notes, the said Ratliff "be imprisoned not to exceed three days in the common jail of Bexar County, Texas, until he shall pay the said fine of $100.00 as herein directed and until he shall turn over and deliver to said clerk * * * the notes aforesaid."

The defendant Ratliff, having been taken into custody by the sheriff under a commitment issued on the foregoing judgment, applied for and was granted a writ of habeas corpus, and now seeks release on the ground that the judgment whereby he was deprived of his liberty is null and void.

It is manifest that the act adjudged contemptuous took place without the presence of the court. Such act was the real or pretended sale of the notes *after* the date of the restraining order. The court was utterly without a basis for any finding as to the true date of the notes' sale or transfer save as derived from the testimony of witnesses introduced on the hearing upon defendant's motion to dissolve the restraining order.

The distinction between direct and constructive contempt of court was declared in Ex Parte Stricker, 109 Fed., 149, to be:

"In the one the court sees and knows all the acts which constitute the contempt, and needs no testimony to establish their existence as facts, while in the other testimony must be heard to inform the court, and, this being so, due process of law demands that this testimony should be heard publicly, in open court, and by both sides to the controversy, after due notice to the accused of what is alleged against him, in order that he may have an opportunity to meet and explain it."

One may be ready in a motion to dissolve a mere temporary restraining order affecting property, and be wholly unprepared to defend his liberty. One may be content with evidence on a motion to dissolve which he would regard as incomplete and inadequate to repel a charge carrying the threat of either monetary fine or deprivation of freedom. Relator was accorded one hearing only and that was on his own motion to dissolve. Without a charge of contempt in any form having been preferred against him, without reason to suspect that he was under any accusation of contempt, and without any opportunity to be heard either in person or by counsel, or to introduce any evidence in defense of his liberty, the court pronounced a sentence against him, on proof of transactions outside the court, and adjudged him guilty of contempt and assessed his punishment at both fine and imprisonment. The judgment is a

nullity under a long and unbroken line of decisions of both the Supreme Court and the Court of Criminal Appeals. Ex Parte Ireland, 38 Texas, 351; Ex Parte Testard, 101 Texas, 251, 106 S. W., 319; Ex Parte Lipscomb, 111 Texas, 418, 239 S. W., 1101; Ex Parte Kilgore, 3 Texas Crim. App., 247; Ex Parte Foster, 44 Texas Crim. App., 423, 60 L. R. A., 631, 100 Am. St., 866, 71 S. W., 594; Ex Parte Landry, 65 Texas Crim. App.; 440, 144 S. W., 965; Ex Parte Duncan, 78 Tex. Crim. App., 447, 182 S. W., 313, 2 A. L. R., 222; Ex Parte O'Fiel, 93 Texas Crim. App., 214, 246 S. W., 664.

The Supreme Court of the United States determined, in Cooke v. United States, 267 U. S., 535, 69 L. Ed., 607, that not only must the offender have notice and a trial in every contempt proceeding where the court's judgment is based even in part on the testimony of others, but that due process requires such notice and trial, although the court had information of the contumacy "by confession of the party." In Cooke v. United States, supra, the court, by Chief Justice Taft, said:

"Due process of law, therefore, in the prosecution of contempt, except of that committed in open court, requires that the accused should be advised of the charges and have a reasonable opportunity to meet them by way of defense or explanation. We think this includes the assistance of counsel, if requested, and the right to call witnesses to give testimony, relevant either to the issue of complete exculpation or in extenuation of the offense and in mitigation of the penalty to be imposed. See Hollingsworth v. Duane, 12 Fed. Cases, 359, 360; In re: Stewart, 118 La. 827; Ex Parte Clerk, 208 Mo., 121."

In one of the great opinions delivered by Mr. Justice White, the court announced: "The fundamental conception of a court of justice is condemnation only after hearing. * * * A hearing of a court pronounced against a party without hearing him or giving him an opportunity to be heard is not a judicial determination of his rights, and is not entitled to respect in any other tribunal." Hovey v. Elliott, 167 U. S., 414, 42 L. Ed., 215.

The judgment against Ratliff was not only rendered without giving him an opportunity to adduce evidence, but Ratliff had no intimation of the intention of the judge to try him or to punish him until he heard the judgment pronounced ordering him committed to jail. In Hovey v. Elliott, supra, the court quoted with approval the statement of Lord Lyndhurst that it was against every principle of

justice "that judgment should be pronounced, not only without giving the party an opportunity of adducing evidence, but without giving him notice of the intention of the judge to proceed to pronounce the judgment." Chapel v. Childs, 2 Cromp. & Jer., 574.

The Supreme Court of Montana was called upon to determine the validity of an order of the District Court holding one Clancy guilty of contempt under facts not essentially different from those recited in the order complained of by Ratliff, save that Ratliff denied, while Clancy admitted, while a witness in open court, the commission of the acts adjudged to constitute contempt. Clancy had been served with a temporary injunction restraining him from entering certain premises. He filed an answer and a motion to dissolve the temporary injunction. When the court heard the motion to dissolve, it appeared, from Clancy's own evidence in support of his motion, that shortly after he had been served with the temporary restraining order, on advice of counsel, he had posted three separate location notices upon the premises. The court thereupon determined that Clancy was in contempt of court in entering on the premises in disobedience to the temporary injunction and refused to further hear Clancy's motion to dissolve, and subsequently the court again declined to hear Clancy in opposition to his adversary's application for a further injunction pendente lite. In holding void the adjudication that Clancy was in contempt, the Supreme Court of Montana said:

"When relator's motion came on for hearing, and he took the stand in his own behalf, no judgment or other proceedings for contempt had been taken against him. No affidavit containing the facts constituting the contempt had been presented. No notice had been given him; nor had he been served with an order to show cause why he should not be punished for contempt. On the contrary, it does appear that, on the hearing of said motion on the 3rd day of March, relator was held guilty of contempt without notice, without an opportunity to be heard, without an opportunity to defend, and in the absence of an affidavit of the facts constituting the contempt necessary to set the power of the court in motion. It appears from the evidence of relator that any contempt which relator may have committed was 'constructive,' that is—one not committed in the immediate view and presence of the court—and therefore a contempt which did not permit a summary punishment." State v. Clancy, 24 Mont., 362.

The cases seem in harmony on the proposition that a judgment convicting one of contempt is void when entered, as in this case, on

a hearing of some matter foreign to an accusation of contempt, though in the case wherein an injunction has been issued and disobeyed. State of Minnesota ex rel. Hurd v. Willis, 61 Minn., 120; In re: Smith, Petitioner, 52 Kan., 17; Hynds v. Brooklyn Heights R. R. Co. (N. Y.), 111 App. Div., 339. The equity rule is laid down by the Supreme Court of Vermont in this language: "It seems to be assumed, as the general rule of chancery law, that the parties being served with process, for the general purpose of the suit, may be proceeded against, and adjudged guilty of contempt, without notice, or excuse therefor, and punished. But this is a distinct, and independent matter, as much as a new suit, and obviously requires a distinct notice, as much as a new suit. Such is the uniform practice of Courts of Chancery, as far as we can learn." Ex Parte Langdon, 25 Vermont, 683.

The filing by Ratliff of a sworn answer, which the court subsequently found, on consideration of the testimony of witnesses, to be false, would not justify Ratliff's punishment as for direct contempt. People v. Stone, 181 Ill. App., 477. The Texas Court of Criminal Appeals determined in Ex Parte O'Fiel, 93 Texas Crim., 214, 246 S. W., 665, that the admission by an attorney in open court of the filing in a pending case of a contemptuous paper did not justify the entry of a final judgment summarily convicting the attorney of contempt. The decision accords with that of the United States Supreme Court in Cooke v. United States, supra, that due process requires that one charged with contempt be accorded the opportunity not only to establish a complete defense, but to offer evidence and argument in extenuation of his offense and in mitigation of the penalty.

The judgment of the District Court is void because it undertakes to deprive relator of his property and liberty without due process of law, as guaranteed to him by Section 19 of Article I of the Bill of Rights in the Constitution of Texas, and by the Fifth Amendment to the Constitution of the United States. Relator is entitled to be discharged from custody. His discharge is therefore ordered.