Ex parte Mark S. STRICKLAND.

No. 11–86–268–CV.

Court of Appeals of Texas,
Eastland.

Feb. 5, 1987.

Larry D. Robertson, Schulz & Robertson, Abilene, for appellant.

Kent Sutton, Dist. Attorney's Office, Abilene, for appellee.

## OPINION

ARNOT, Justice.

This is an original habeas corpus proceeding filed in this Court pursuant to TEX. GOV'T CODE ANN. sec. 22.221(d) (Vernon Pamph.1987).

This case concerns relator's right to appointed counsel at a contempt proceeding. Relator, Mark S. Strickland, complains that the judgment is void because: (1) the trial court failed to inform him of his right to appointment of counsel if indigent; and (2) the trial court failed to appoint an attorney to represent relator when relator's indigency was brought to the attention of the trial court. Further, relator argues that he could not intelligently and intentionally waive his right to the assistance of counsel if he was unaware that one would be provided for him if he was indigent.

On the fourth day of December, 1986, relator was found in contempt for failure to pay child support as ordered in a prior decree of divorce entered in the 161st Judicial District Court in Ector County, Texas. In the contempt hearing, relator was found to be in arrears in the amount of $9,400 as of December 4, 1986, and ordered committed to the Taylor County Jail for 179 days

and for so long thereafter, until he purged himself of contempt by the payment of arrears of $400.00. The balance of the arrearage was ordered to be paid at the rate of $100 per month beginning the first day of June 1987.

The controlling issue in this case is whether or not an indigent has the right to appointed counsel in a contempt hearing for failure to pay child support.

The sixth amendment to the Constitution of the United States declares: "In all *criminal* prosecutions, the accused shall enjoy the right to ... have the Assistance of Counsel." (Emphasis added) The Supreme Court has held that an indigent in a criminal case is entitled to a court-appointed attorney and that this right is applicable to the States by virtue of the fourteenth amendment. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). This protection was extended to all criminal cases wherein the indigent litigant can be deprived of his liberty. *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). In *Argersinger,* the Court stated: "[A]bsent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial."

The Supreme Court has also held this protection extends to non-criminal cases. In a juvenile proceeding, the Court stated:

Due Process Clause of the Fourteenth Amendment requires that in respect of proceedings to determine delinquency *which may result in commitment* to an institution in which the juvenile's freedom is curtailed, the child and his parents must be notified of the child's right to be represented by counsel retained by them, or *if they are unable to afford counsel,* that *counsel will be appointed* to represent the child. (Emphasis added)

*In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). This protection applies only in cases in which the accused can be incarcerated. The Supreme Court refused to extend this right to an indigent in a non-criminal custody case where the individual would not be deprived of her liberty.

*Lassiter v. Department of Social Services,* 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981).

In Texas, contempt has been classified as: (1) civil or criminal; and (2) direct or constructive. This has previously been explained in *Ex parte Wilson,* 559 S.W.2d 698 (Tex.Civ.App.—Austin 1977, original proceeding):

The purpose of civil contempt is remedial and coercive in nature. A judgment of civil contempt exerts the judicial authority of the court to persuade the contemner to obey some order of the court where such obedience will benefit an opposing litigant. Imprisonment is conditional upon obedience and therefore the civil contemner "carries the keys of [his] prison in [his] own pocket." *Ex parte Werblud,* 536 S.W.2d 542, 545 (Tex.1976); accord, *Ex parte Hosken,* 480 S.W.2d 18, 23 (Tex.Civ.App.1972).

Criminal contempt on the other hand is punitive in nature. The sentence is not conditioned upon some promise of future performance because the contemner is being punished for some completed act which affronted the dignity and authority of the court. *Ex parte Werblud,* supra.

A direct contempt occurs within the presence of the court; a constructive contempt outside the presence of the court. *Ex parte Ratliff,* 117 Tex. 325, 3 S.W.2d 406 (1928).

█ The order before this Court is both criminal and civil in nature. Relator was punished for a completed act of failure to make child support payments as ordered and sentenced to confinement for 179 days. This is criminal contempt. Further, relator was ordered incarcerated for an indefinite period after the 179 days until he paid $400.00. This is civil contempt. Since it occurred outside the presence of the court, the contempt is constructive. The determination whether the contempt is civil or criminal is made only after the evidence is presented and the sentence is imposed.

Although Texas courts have made the distinction between criminal and civil contempt, this distinction is not controlling.

"The right to counsel turns on whether deprivation of liberty may result from a proceeding, not upon its characterization as 'criminal' or 'civil.'" *Ridgway v. Baker*, 720 F.2d 1409 (5th Cir.1983). When he was summoned to court to show why he should not be held in contempt for nonpayment of support, relator was faced with the prospect of a criminal commitment. "If, however, imprisonment, by whatever process it is adjudicated, is the possible result of a proceeding, the defendant who is threatened with jail has the right to a lawyer." *Ridgway v. Baker*, supra. "It would be absurd to distinguish criminal and civil incarceration; from the perspective of the person incarcerated, the jail is just as bleak no matter which label is used." *Walker v. McLain*, 768 F.2d 1181 (10th Cir.1985).

■■■ Therefore, the right to counsel in any constructive contempt cause, whether it be labeled civil or criminal, in which the accused can be denied his liberty is guaranteed under the sixth and fourteenth amendments to the United States Constitution; and the right to counsel must be offered to an indigent.

Relator cites *Ex parte Lopez*, 710 S.W.2d 948 (Tex.App.—San Antonio 1986, original proceeding), and *Ex parte Hamill*, 718 S.W.2d 78 (Tex.App.—Fort Worth 1986, original proceeding), as authority for his arguments. These cases can be distinguished from the instant case.

In *Hamill*, the relator advised the court that he "could not afford to hire the attorneys he had spoken to." In the present case, the relator's ex-wife, represented herein by the Taylor County District Attorney, argues that relator waived his right to counsel.

The relator, at the contempt hearing, responded to questions by the court master as follows:

THE COURT: Mr. Strickland, have you elected not to consult with an attorney?

MR. STRICKLAND: Yes, ma'am.

THE COURT: Okay. Do you know that there is a possibility you can spend some more time in jail in this case?

MR. STRICKLAND: Yes ma'am.

THE COURT: And you don't want an attorney. You are waiving your right to have an attorney to represent you.

MR. STRICKLAND: I feel that people in here are capable of making that decision.

THE COURT: Well, what I want to know, Mr. Strickland, is you are entitled to an attorney, and what I want to know is, if you are waiving the right to have an attorney represent you.

MR. STRICKLAND: Yes, ma'am.

THE COURT: Okay. We will proceed with the hearing.

The court master did not advise relator that if he could not afford counsel, one would be provided for him. Unless he has been so informed, a party's failure to request counsel is not a waiver of his constitutional right to the assistance of counsel. *Ex parte Auten*, 458 S.W.2d 466 (Tex.Cr. App.1970).

In *Lopez*, the relator did not request counsel or ask that counsel be appointed; however, the court held that the evidence conclusively showed that the relator was indigent at the contempt hearing. The evidence before this Court does not conclusively show that relator was indigent at the time of the hearing.

The testimony reflects that relator is only partially employed. The relator's father testified that relator works part-time for him: "I work him a few days at a time.... [H]e doesn't have any work at the present time.... He is capable, yes, when the work is available." The above statements were given as one of the reasons why the relator had not paid his support obligations. These statements do not expressly refer to relator's ability to hire counsel for the December 4, 1986, hearing. One can infer from the facts that relator is currently underemployed, but the record does not show an inability to work. To the contrary, when asked why he "willfully" refused to pay the support, relator stated: "It would be a combination of lack of economic prosperity, and the fact that I don't feel that [my child] is being treated right."

Relator's testimony shows a refusal to pay support for non-economic reasons.

However, the following testimony must be considered:

> MR. STRICKLAND: My present wife is in very serious condition in the hospital right now. She had major surgery Monday, and she's got, the doctor said, a minimum of eight-week recovery and bedfast till as many as four months.

This testimony is germane when considered with the following statement offered immediately prior to the court's ruling:

> THE COURT: Do you have any further evidence?
>
> RESPONDENT'S ATTORNEY: No, Your Honor, we do not.
>
> MR. STRICKLAND: May I make a statement, Your Honor?
>
> THE COURT: You may make a short statement.
>
> MR. STRICKLAND: In the sentencing, would you please make it time, because the money is not available, and everything that we do have, what little we do have, Karen is going to need in the following week just to survive.

This clearly raises the question of relator's inability to employ counsel at the time of the hearing. The constitutional protection arises when the question of indigency is raised. The Fort Worth court recently held in *Hamill* that:

> Once the question was raised as to [relator's] ability to employ an attorney to represent him at the contempt matter, it was incumbent upon the court master to advise [relator] of his right to appointment of counsel if he were indigent.

While he never requested counsel, the relator did not waive his constitutional right to assistance of counsel if he were indigent and in jeopardy of incarceration.

We find that relator could not intelligently and intentionally waive the right to counsel unless he had been advised that if he could not afford counsel, that counsel would be provided for him. Without a valid waiver of counsel, the judgment of contempt is void.

In light of our holding, we do not reach relator's fourth point of error.

The writ of habeas corpus is granted, and relator is discharged from custody.