**Ex parte Rose Campbell
POWELL, Relator.**

**No. 09–94–199 CV.**

Court of Appeals of Texas,
Beaumont.

Submitted June 16, 1994.

Decided Sept. 29, 1994.

Charles Gordon Reed, Beaumont, for appellant.

Michael R. Ramsey, Bush, Lewis, Ramsey & Roebuck, P.C., Beaumont, attorney ad litem.

Before BROOKSHIRE and BURGESS, JJ., and PAUL W. NYE, Acting C.J., Retired.

## OPINION

PAUL W. NYE, Acting Chief Justice.[1]

### FACTS

On May 22, 1989, Melissa Campbell, a minor, was awarded $40,000.00 less attorneys fees and expenses, for the wrongful death of her father, Noah Campbell. The sum was paid into the registry of the court unto the clerk of Jefferson County for the use and benefit of Melissa Campbell. Beginning in November of 1989, Rose Campbell Powell, mother of Melissa Campbell, made six withdrawals from this account upon various Motions to Withdraw and which were granted by the acting and presiding judges of the District Court of Jefferson County, Texas. These withdrawals were as follows:

1. On November 1, 1989, the Honorable Jack King granted a Motion to Withdraw $2,600.00 for orthodontic work.
2. On June 10, 1992, the Honorable J. Michael Bradford granted a Motion to Withdraw $8,599.55 to purchase an automobile for the minor, Melissa Campbell.
3. On June 22, 1992, the Honorable J. Michael Bradford granted a Motion to Withdraw $1,500.00 for a trip to Europe. On the same date, Judge Bradford also granted a Motion to Withdraw $1,500.00 for car insurance, clothes, and school supplies.
4. On July 27, 1992, the Honorable J. Michael Bradford granted a Motion to Withdraw $4,500.00.
5. On December 8, 1992, the Honorable J. Michael Bradford granted a Motion to Withdraw $4,000.00 for wedding and baby expenses.
6. On January 21, 1993, the Honorable J. Michael Bradford granted a Motion to Withdraw $5,374.40 for expenses of pregnancy.

In March, 1994, Melissa Campbell, the minor, met with the Honorable J. Michael Bradford regarding the status of the funds in the court's registry. At this time, discrepancies were discovered in the withdrawals of the fund. On April 5, 1994, Judge Bradford signed an order directed to Rose Campbell Powell requiring her to answer and show cause why she should not be held in contempt. A contempt hearing was set for April 18, 1994. Judge Bradford appointed Mike Ramsey as attorney ad litem for the minor, Melissa Campbell.

On May 23, 1994, after granting three continuances, the hearing was held. Rose Campbell Powell plead guilty to the charge

---

1. Chief Justice, Retired, Court of Appeals, Corpus Christi, sitting by assignment pursuant to

Tex.Gov't Code Ann. § 74.003(b) (Vernon 1988).

of presenting false documents and making false statements to the court to obtain money. Thereafter, she presented evidence through her own testimony and exhibits in mitigation of the penalty to be imposed. Rose Campbell Powell was found guilty of contempt of court and sentenced by Judge Bradford to six months imprisonment and a fine of $500.00. The court held open the issue of attorneys fees for the attorney ad litem to be determined after further evidence and a hearing. The court stated, however, in its judgment that upon significant restitution by Rose Campbell Powell, the court would consider a reduction in the six month sentence.

Upon judgment, Rose Campbell Powell was placed into custody of the Sheriff of Jefferson County, Texas, and began serving the six month sentence. Approximately two weeks later, Rose Campbell Powell submitted her Application for Writ of Habeas Corpus to the Ninth Court of Appeals at Beaumont, which granted bail pending the outcome of this application.

*CONTEMPT*

■ Contempt is the means by which the courts are able to enforce compliance with their orders, judgments, and processes by requiring individuals to defer to the authority of the courts in its administration of justice. This doctrine has evolved and developed mainly through the common law, subject of course, to constitutional limits and statutory safeguards. *Ex parte Arnold,* 503 S.W.2d 529 (Tex.Crim.App.1974); *Ex parte Green,* 46 Tex.Crim. 576, 81 S.W. 723 (1904). The acts of the relator in presenting false documents and making false statements to the court were undoubtedly acts of contempt, since such acts tend to bring the authority and administration of the law into disrepute and disregard.

■ Acts of contempt are distinguished as either direct or indirect. This distinction is important since it determines the due process requirements that must be afforded the accused contemner. The classification of direct or indirect contempt revolves around whether the actual act of contempt occurs "in the presence of the court." This term, "in the presence of the court," does not indicate only the immediate presence of the judge, but extends to the courtroom, the jury, the jury room and all constituent parts of the court when engaged in the business of the court. *Ex parte Aldridge,* 169 Tex.Crim. 395, 334 S.W.2d 161 (1959).

■ Direct contempt occurs when the words spoken or acts done which constitute contempt occur in the presence of the court. *Ex parte Norton,* 144 Tex. 445, 191 S.W.2d 713 (1946); *Ex parte Ratliff,* 117 Tex. 325, 3 S.W.2d 406 (1928); *Ex parte Lake,* 37 Tex. Crim. 656, 40 S.W. 727 (1897). Since the court has direct knowledge of the facts, direct contempts are punishable summarily without the requirements of complaint, notice, and hearing. *Ex parte Daniels,* 722 S.W.2d 707 (Tex.Crim.App.1987); *Ex parte Harvill,* 415 S.W.2d 174 (Tex.1967).

■ Conversely, indirect and constructive contempt is an act which does not occur within the presence of the court, but rather at a distance. *Ex parte Hardin,* 161 Tex. 567, 344 S.W.2d 152 (1961). This type of contempt tends to obstruct, degrade, prevent, interrupt, or embarrass the administration of justice. *Ex parte Privitt,* 127 Tex. Crim. 475, 77 S.W.2d 663 (1934); *Ex parte Vogler,* 110 Tex.Crim. 579, 9 S.W.2d 733 (1928). If contempt is constructive, the alleged contemner has the right to notice of the charge, a right to a trial or hearing, and a right to counsel. *Ex parte Wilson,* 559 S.W.2d 698 (Tex.Civ.App.—Austin 1977, no writ); *Ex parte Hosken,* 480 S.W.2d 18 (Tex. Civ.App.—Beaumont 1972, no writ).

In *Ratliff,* the court held that a filing of a sworn answer by the Defendant which was found to be false only justified punishment for constructive contempt and not direct. 117 Tex. at 330, 3 S.W.2d at 408. In the case at bar, the Relator presented false documents and made false statements to the court to obtain withdrawals for her daughter's account in the court registry. To obtain such withdrawals, the Relator was required to present Motions to Withdraw to the presiding judge. In light of *Ratliff,* the Relator's contempt would be constructive in nature, thereby requiring notice, a hearing, and counsel for the contemner.

The second classification of contempt involves the determination of whether the contempt is civil or criminal. This determination is important since it will ultimately determine which court has jurisdiction to issue a Writ of Habeas Corpus, and review the punishment assessed. These classifications of civil versus criminal contempt have nothing to do with the characterization of the underlying case but rather stem from the wrongful conduct committed by the contemner. In brief, civil contempt is the failure to obey a court order or decree, while criminal contempt arises from the doing of some forbidden act. *Texas Pet Foods, Inc. v. State,* 529 S.W.2d 820 (Tex.Civ.App.—Waco 1975, writ ref'd n.r.e.); *Ex parte Wood,* 494 S.W.2d 264 (Tex.Civ.App.—Texarkana 1973, no writ); *State v. Morris,* 208 S.W.2d 701 (Tex.Civ. App.—Waco 1948, writ ref'd n.r.e.).

Civil contempt is a power of the court which is necessary to preserve and enforce the rights of private parties and insure enforcement of their interest in orders and decrees for their benefit. *Ex parte Wolters,* 64 Tex.Crim. 238, 144 S.W. 531 (1911). Thus, the proceedings for civil contempt are between the original parties and the punishment is intended to coerce compliance with an order or judgment of the court. Therefore, a civil contempt order exerts the judicial authority of the court to persuade the contemner to obey an order of the court which will benefit an opposing litigant. This punishment is conditional and can be purged by the contemner by performing the requested acts, thereby lifting the sentence imposed. *Hosken,* 480 S.W.2d at 23. It has been said that the civil contemner carries the keys of his prison in his own pocket. *Ex parte Werblud,* 536 S.W.2d 542 (Tex.1976); *Wilson,* 559 S.W.2d at 699.

Conversely criminal contempt consists of acts of disrespect directed at the courts or to its process which impede the court's administration of justice or tend to bring the court into disrepute. *Ex parte Robertson,* 27 Tex.Ct.App. 628, 11 S.W. 669 (1889). As such, criminal contempt proceedings are purely punitive in nature and are brought for the purpose of punishing the contemner by fine and imprisonment. The judgment rendered in a criminal contempt proceeding is unconditional and definite, with the proceedings occurring between the accused and the court, not the original parties to the suit. *Wolters,* 144 S.W. at 568; *Beverly v. Roberts,* 215 S.W. 975 (Tex.Civ.App.—Amarillo 1919, no writ).

In the case at bar, the Relator was accused of presenting false documents and making false statements to the court; acts which are prohibited due to their impeachment of justice and ability to undermine the judicial authority of the court. As would follow from the language in the show cause order and subsequent judgment of contempt, Relator was accused and found guilty of criminal contempt and the punishment of six months imprisonment and a $500.00 fine was punitive in nature.

The Court of Criminal Appeals is the only Appellate Court in Texas which possesses the general and unlimited power to issue Writs of Habeas Corpus in criminal cases. *State ex rel. Wilson v. Briggs,* 171 Tex.Crim. 479, 351 S.W.2d 892 (1961); *Ex parte Rutherford,* 556 S.W.2d 853 (Tex.Civ. App.—San Antonio 1977, no writ); TEX. CONST. art. V, § 5. The Texas Supreme Court has the power to issue Writs of Habeas Corpus where the restraint in question arose from a violation of an "order, judgment, or degree previously made, rendered, or entered by the court or judge in a civil case." TEX.GOV'T CODE ANN. § 22.002 (Vernon 1988). The interpretation of this statute by the Supreme Court has been very strict, in that no inquiry into the restraint has been permitted, unless a particular civil judgment, order or decree has been violated. *Ex parte Waters,* 498 S.W.2d 144 (Tex.1973); *Ex parte McDonald,* 441 S.W.2d 828 (Tex.1969); *Ex parte Hofmayer,* 420 S.W.2d 137 (Tex.1967); *Ex parte Morris,* 162 Tex. 530, 349 S.W.2d 99 (1961).

Prior to 1991, the Court of Appeals writ power was limited to restraints imposed by violations of a court's order, judgment, or decree in cases involving divorce, wife or child support, or child custody issues. TEX. GOV'T CODE ANN. § 22.221 (Vernon 1988). The interpretation of this writ power by the

courts has expressly limited the inquiry of the Courts of Appeals to those types of cases delineated in the statute. *International Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Axelson, Inc.,* 593 S.W.2d 362 (Tex.Civ.App.—Texarkana 1979, no writ); *In re Newton,* 534 S.W.2d 194 (Tex.Civ.App.—Houston [14th Dist.] 1976, no writ); *Ex parte Craddock,* 452 S.W.2d 954 (Tex.Civ.App.—Houston [1st Dist.] 1970, no writ).

In 1991, however, the statute was rewritten to extend the Court of Appeals writ power to those cases involving commitment due to the violation of an "order, judgment, or decree previously made, rendered, or entered by the court of judge in a civil case." TEX.GOV'T CODE ANN. § 22.221 (Vernon 1994). This power was granted concurrently with the writ power held by the Supreme Court and the language mirrors that of the writ power conferred to the Supreme Court. This broadening of the Court of Appeals writ power extends the court's authority to inquire into civil matters beyond those only arising from violations of orders or judgments in divorce, child support and custody cases. Nevertheless, the restraint in question must still have occurred due to a violation of an order, judgment or decree in a civil case, otherwise the power to issue writs for acts of contempt rests solely with the Court of Criminal Appeals. *Waters,* 498 S.W.2d at 145; *McDonald,* 441 S.W.2d at 829; *Hofmayer,* 420 S.W.2d at 138; *Morris,* 162 Tex. at 532, 349 S.W.2d at 100.

Since the acts of contempt committed by the Relator were in fact criminal in nature, and did not arise from a violation of an order, judgment or decree in a civil case, the Court of Appeals does not have the power to issue a Writ of Habeas Corpus in this case nor to inquire into the punishment assessed against Relator.

Accordingly, the Petition for Habeas Corpus is dismissed for Want of Jurisdiction.