Patrick A. Pirtle, Justice
Relator, David Christopher Hesse, seeks a writ of mandamus from this court directing Respondent, the Honorable Edward Lee Self, to vacate a prior order denying Relator a jury trial in a pending section 21.002(d) contempt proceeding[1] and directing Respondent to set the matter for a jury trial.[2] Because Relator is not entitled to the relief requested, we will deny his petition.
BACKGROUND
Relator is an attorney practicing criminal defense work in Amarillo, Potter County, Texas. On April 8, 2016, while acting in that capacity as retained counsel for Adoun Phommivong, in a criminal prosecution pending in the 251st District Court, Relator was held in contempt by the Honorable Ana E. Estevez for using language *896 that Judge Estevez deemed inappropriate for proper courtroom decorum. See § 21.002(b) (providing that punishment for contempt of a district court is by a fine of up to $500, or confinement in the county jail for not more than six months, or by both fine and confinement). At that point, Relator insisted upon his right to a section 21.002(d) hearing before an assigned judge. See § 21.002(d) (requiring that an officer of the court held in contempt by a trial court shall, upon request, be released on personal recognizance until a section 21.002(d) contempt proceeding can be held by another judge assigned by the regional administrative judge).
On October 7, 2016, Judge Estevez signed a document entitled Amended Notice of Allegations of Contempt. The notice provided that the allegations of contempt would be heard by Judge Self on November 30, 2016, and that the range of punishment would be by a fine of not more than $500, or confinement in the county jail for a period of not more than six months, or by both fine and confinement. For several reasons not relevant to this proceeding, that hearing was delayed until 2018.
On February 8, 2018, Relator filed a demand for jury trial on the allegations of contempt and on June 4, 2018, Judge Self signed an order setting the matter for a trial before the court on August 1, 2018. In response, Relator filed his Petition for Writ of Mandamus.
MANDAMUS STANDARD OF REVIEW
Mandamus is an extraordinary remedy granted only when a relator can show that (1) the trial court abused its discretion and (2) that no adequate appellate remedy exists. In re H.E.B. Grocery Co., L.P. , 492 S.W.3d 300, 302 (Tex. 2016) (orig. proceeding) (per curiam). When seeking mandamus relief, a relator bears the burden of proving these two requirements. Walker v. Packer , 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). To establish an abuse of discretion, the relator must demonstrate the trial court acted unreasonably, arbitrarily, or without reference to any guiding rules or principles. See Downer v. Aquamarine Operators, Inc. , 701 S.W.2d 238, 241-42 (Tex. 1985). To establish no adequate remedy by appeal, the relator must show there is no adequate remedy at law to address the alleged harm and that the act requested is a ministerial act, not involving a discretionary or judicial decision. State ex rel. Young v. Sixth Judicial Dist. Court of Appeals , 236 S.W.3d 207, 210 (Tex. Crim. App. 2007) (orig. proceeding). Furthermore, in order to establish a ministerial act, a relator must also show (1) a legal duty to perform; (2) a demand for performance; and (3) a refusal to act. Stoner v. Massey , 586 S.W.2d 843, 846 (Tex. 1979).
RIGHT TO A JURY TRIAL IN A CONTEMPT PROCEEDING
Few areas of jurisprudence are more shrouded in mystique and confusion than the law surrounding procedural due process and the right to a jury trial in the context of the inherent right of a court to enforce by contempt compliance with a judicial directive, either express or implied, or to impose punishment for its disobedience. Maintaining courtroom decorum is an implied judicial directive familiar to all officers of the court that is enforceable by contempt. See § 21.001(b) (providing that "[a] court shall require the proceedings be conducted with dignity and in an orderly and expeditious manner and control the proceedings so that justice is done"). While a court's inherent right of enforcement by contempt has been codified in the Texas Government Code, few statutory provisions address the exact procedures applicable to the exercise of that inherent power. See §§ 21.001(a), 21.002(a).
*897 For more than one hundred and fifty years, courts and scholars have used various clichés and labels to describe and differentiate various types of inherent contempt powers a court might possess and the sanctions it might impose to enforce that power. Texas courts have long recognized two basic types of inherent contempt: (1) direct contempt and (2) indirect or constructive contempt. Furthermore, in their discussions, courts and scholars have frequently differentiated various acts of inherent contempt by distinguishing between the appropriateness of the sanction imposed or sought to be imposed. In that regard, inherent contempt sanctions have characteristically been divided into two additional categories: (1) civil or coercive sanctions and (2) criminal or punitive sanctions. Finally, some discussions regarding inherent contempt and the procedures applicable to its enforcement have revolved around the distinction whether the sanction imposed was (1) petty or (2) serious.
DIRECT CONTEMPT VS. CONSTRUCTIVE CONTEMPT
Initially, one must distinguish between direct and constructive contempt. Direct contempt involves something that happens in the immediate presence of the court, during a courtroom proceeding, and it is, generally, subject to immediate punishment by the court. Section 21.001 provides that "[a] court shall require the proceedings be conducted with dignity and in an orderly and expeditious manner and control the proceedings so that justice is done." § 21.001(b). A litigant's or a court participant's flagrant violation of this implied directive often results in a direct contempt proceeding. In such a proceeding, the court has direct knowledge of the facts which constitute the contemptuous conduct. The essence of direct contempt in this situation is that the offending conduct obstructs or tends to obstruct the proper functioning of the court and the administration of justice. See Ex parte Daniels , 722 S.W.2d 707, 708 (Tex. Crim. App. 1987) (involving a pro se litigant who created a disturbance during trial by fighting with the court bailiff after she was asked to leave the courtroom). In situations of direct contempt, the court must act without hesitation in order to suppress the disturbance and preserve appropriate decorum and order in the courtroom. Direct contempt is, therefore, subject to summary disposition without affording the accused the same rights and due process considerations as someone accused of a typical criminal offense. Ex parte Duncan , 182 S.W. 313, 314 (Tex. Crim. App. 1916), overruled on other grounds, Ex parte Winfree , 153 Tex. 12, 263 S.W.2d 154 (1953).
By way of contrast, constructive or indirect contempt involves actions that occur outside the presence of the court which require testimony or the production of evidence necessary to establish the occurrence of the allegedly contemptuous act. Ex parte Chambers , 898 S.W.2d 257, 259 (Tex. 1995), Contrary to acts of direct contempt, constructive contempt does not generally relate to acts which interfere with or interrupt courtroom proceedings but is most often characterized by a dispute between the parties to the litigation concerning the enforcement of a court order or directive affecting the subject matter of the pending litigation. Id. For example, the enforcement of an injunction in a civil case by the use of contempt would typically be referred to as constructive or indirect contempt.
The distinction between direct and constructive contempt is important because due process requires different procedures for the adjudication of contempt and the imposition of sanctions depending on the character of the contemptuous act and the nature of the sanctions sought or imposed. As explained above, a person guilty of direct contempt is not entitled to the *898 same procedural safeguards as someone accused of constructive contempt. In cases of constructive contempt, where there are factual issues regarding the allegedly contemptuous act, due process requires that the accused be afforded greater procedural rights. For example, due process requires that the accused be advised of the nature and occurrence of the alleged contemptuous acts and have a reasonable opportunity to address those charges by way of defense or explanation, including the right to the assistance of counsel. Cooke v. United States , 267 U.S. 517, 537, 45 S.Ct. 390, 69 L.Ed. 767 (1925) ; Ex parte Flournoy , 158 Tex. 425, 312 S.W.2d 488, 492 (1958). Furthermore, "[d]ue process requires that the alleged contemnor be personally served with a show cause order or that it be established that he had knowledge of the content of such order." See Ex parte Blanchard , 736 S.W.2d 642, 643 (Tex. 1987). See also Hesse v. Howell , No. 07-16-00453-CV, 2018 WL 2750005, at *5, 2018 Tex. App. LEXIS 4127 at *13-14 (Tex. App.-Amarillo, June 7, 2018, no pet. h.).
CIVIL OR COERCIVE CONTEMPT VS. CRIMINAL OR PUNITIVE CONTEMPT
Once a finding of contempt has been made, the court may decide to punish or respond to the contemptuous act by applying (1) civil or coercive sanctions, or (2) criminal or punitive sanctions, or (3) a combination of both. Although contempt proceedings are considered to be quasi-criminal in nature; Ex parte Cardwell, 416 S.W.2d 382, 384 (Tex. 1967), it is the character of the sanction sought to be imposed that determines the traditional labeling of the proceeding as being either "civil" or "criminal." Hicks v. Feiock, 485 U.S. 624, 646, 108 S.Ct. 1423, 99 L.Ed. 2d 721 (1988).
Civil contempt, also know as coercive contempt, has the general purpose of securing compliance with or performance of a court order or decree, and therefore, it tends to benefit the party who originally sought that order or decree from the court. Generally, a civil contempt sanction provides for the incarceration of the alleged contemnor only until he complies with some affirmative act required by the court's contempt order. This type of penalty is considered to be civil in nature because it is designed to compel the doing of some act. Because the contemnor can avoid incarceration by obeying the court's order, courts have typically said that the contemnor "carries the keys of his own prison in his own pocket." See Ex parte Werblud , 536 S.W.2d 542, 545 (Tex. 1976). In other words, a contempt proceeding is considered to be civil when the contemnor may be released of the penalty of contempt by compliance with the provisions of the court's order. Id.
Because civil contempt tends to place the power of the court behind the benefitting party, to be enforceable, equity and due process require that the order be clear, specific, and unambiguous. In re H.E.B., No. 07-17-00351-CV, 2018 WL 651672 at *5, 2018 Tex. App. LEXIS 885, at *13 (Tex. App.-Amarillo, Jan. 31, 2018, pet. denied) (citing In re Coppock , 277 S.W.3d 417, 418 (Tex. 2009) ). Civil or coercive contempt almost always involves conduct that does not take place in the immediate presence of the court and, therefore, it is similar to constructive contempt. As such, it requires greater adherence to the traditional notions of due process such as (1) notice of the alleged violations, (2) notice of hearing, and (3) an ample opportunity to prepare for and respond to the allegations.
Unlike civil contempt, the nature and purpose of criminal or punitive contempt is to punish the alleged contemnor for past behavior. The order of confinement or the imposition of a monetary penalty is not conditioned upon some future *899 performance, but rather, it is being meted out by the court for the primary purpose of punishing some completed act. The punishment is fixed and definite and nothing the alleged contemnor can do will enable him to avoid punishment. A person cannot be sentenced to a period of confinement for the disobedience of an order unless the order unequivocally commands the alleged contemnor to perform that specific duty or obligation. In re Coppock, 277 S.W.3d at 418. "It is not the fact of punishment but rather its character and purpose that often serve to distinguish between [civil and criminal contempt]." Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 441, 31 S.Ct. 492, 55 L.Ed. 797 (1911). Because criminal contempt proceedings include the possibility of deprivation of someone's liberty, the alleged contemnor is entitled to greater procedural due process.
Criminal or punitive contempt is most often, but not always, associated with direct contempt; while civil or coercive contempt is most often, again but not always, associated with constructive contempt. Therefore, it is not the nature of the underlying proceeding from which the allegations of contempt arise that determines its classification as either criminal or civil, it is the nature of the sanction imposed. One can have a criminal contempt proceeding arise out of a civil case (e.g., imposition of a punitive fine for failure to comply with a court order), and one can have a civil contempt proceeding arise out of a criminal case, (e.g., an order of incarceration for refusal to testify where the alleged contemnor can obtain his release simply by obeying the trial court's directive to testify).
PETTY PENALTIES OR SANCTIONS VS. SERIOUS PENALTIES OR SANCTIONS
Finally, contempt proceedings are sometimes categorized as either being "petty" or "serious," depending on the amount of the fine imposed or period of incarceration ordered. This distinction was discussed by the United States Supreme Court in Muniz v. Hoffman , 422 U.S. 454, 476-77, 95 S.Ct. 2178, 45 L.Ed. 2d 319 (1975). Although Muniz was a federal proceeding involving a contempt citation for the violation of an injunction issued at the request of the National Labor Relations Board, the due process principles apply equally to contempt proceedings before state courts. Bloom v. Illinois, 391 U.S. 194, 199-200, 88 S.Ct. 1477, 20 L.Ed. 2d 522 (1968) (holding that the "Constitution guarantees the right to jury trial in state court prosecutions for contempt just as it does for other crimes"). In Muniz, for the purpose of determining the boundary of the Sixth Amendment's guarantee to a jury trial in a contempt proceeding, the Supreme Court distinguished between "petty" and "serious" offenses and found that, based upon the historical interpretation of the Sixth Amendment, "petty offenses" were offenses in which the punishment did not exceed confinement for a period of six months, or a fine of $500, or by both confinement and a fine. Muniz, 422 U.S. at 476-77, 95 S.Ct. 2178. Based upon this distinction, the Court concluded that because "petty" criminal offenses were tried without the benefit of a jury, then a contempt proceeding could be tried without a jury if the punishment imposed was "petty." Id. The Supreme Court further concluded that criminal contempt proceedings, in and of themselves were not "serious" offenses ipso facto, absent a legislative declaration to the contrary. Id. at 476, 95 S.Ct. 2178. Although the distinction between a "petty" offense and a "serious" offense is somewhat arbitrary, the Texas Supreme Court has held that Texas is in accord with this distinction. See Ex parte Griffin, 682 S.W.2d 261, 262 (Tex. 1984) (holding that "[t]he Sixth Amendment to the United States Constitution guarantees the right to jury trials for serious offenses, *900 but not petty offenses"); Ex parte Werblud, 536 S.W.2d at 547. Based upon this distinction, the Texas Supreme Court has also opined that the Texas Legislature must have intended that petty contempt proceedings be tried without a jury because they have kept the statutory penalties for contempt within the range of a petty offense. See ids="10136060" index="43" url="https://cite.case.law/sw2d/536/542/#p545">id. See also § 21.002(b).
ANALYSIS
Here, Relator was found to be in direct contempt of court for using language in the courtroom, during a criminal proceeding, which the trial court found inappropriate. No sanctions were imposed at that time because Relator insisted upon his right to a hearing before an assigned judge, pursuant to section 21.002(d). At that point, the contempt proceeding became a constructive contempt proceeding because a newly-assigned judge would be required to conduct a hearing and determine whether the acts alleged amounted to contempt of court and, if so, what punishment to assess. Because the notice of allegations of contempt clearly limited the potential range of punishment to a fine of not more than $500, or a period of incarceration in the county jail for not more than six months, or by both fine and commitment, with no conditional provisions for release, the contempt proceeding could be described as both criminal and petty.
Relying upon the principle that the Texas Constitution can guarantee rights which are greater than the rights guaranteed by the United States Constitution, Relator maintains that article I, section 15 of the Texas Constitution guarantees him the right to a jury trial in his contempt proceeding. TEX. CONST. art. I, § 15 (providing, in relevant part, that "[t]he right of trial by jury shall remain inviolate"). Specifically, while acknowledging that a criminal contempt proceeding might be classified as a "petty" offense where a jury trial would not be guaranteed by the United States Constitution, Relator contends the Texas Constitution guarantees him greater rights because every person accused of a criminal offense in Texas (even those with potential penalties less than the threshold for a "serious" offense) is entitled to a jury trial. Relator has not cited this court to any authority holding that an officer of the court is entitled to a jury trial, ipso facto, in a section 21.002(d) contempt proceeding where the potential range of punishment was not classified as "serious." Furthermore, we have not located any such authority. See generally Ex parte Reposa, 541 S.W.3d 186 (Tex. Crim. App. 2017) (denying, without addressing the denial of Relator's request for a jury trial, his Motion for Emergency Personal Bond, Bail, or Personal Recognizance Bond Pending Appeal, following a section 21.002(d) contempt proceeding where he was ordered incarcerated).
While Relator's arguments may be well-reasoned and logical, they do not comport with the current state of our jurisprudence regarding the right to a jury trial in a constructive contempt proceeding, criminal or otherwise, classified as a petty offense. As an intermediate appellate court, we are bound to recognize and acquiesce in the decisions of the higher courts of this State, and absent a contrary decision from a higher court or an intervening and material legislative change in the statutory law applicable to contempt proceedings, we are bound by that precedent. Brumley v. State , 804 S.W.2d 659, 661 (Tex. App.-Amarillo 1991, no pet.).
A section 21.002(d) contempt hearing is not a "trial," as that term is used and contemplated by the Texas Constitution concerning a criminal case involving the violation of a penal statute. Being initially found guilty of direct contempt, Relator was not entitled to a jury "trial" when Judge Estevez found him to be in contempt, *901 and section 21.002(d) granting him a statutory right to a de novo hearing before a different judge does not expressly or impliedly grant him that right either. See § 21.002(d). To the contrary, section 21.002(d) provides that the Administrative Judge shall "assign a judge ... to determine the guilt or innocence of the officer of the court." Id. (Emphasis added). Because section 21.002(d) does not expressly provide for the right to a jury trial in a contempt proceeding involving an officer of the court, and because Relator has not otherwise shown himself entitled to a jury trial, he cannot meet the first requirement for the issuance of a writ of mandamus-a showing that the trial court abused its discretion in denying him a jury trial.
CONCLUSION
Relator's petition for a writ of mandamus is denied.

See Texas Gov't Code Ann. § 21.002(d) (West 2004). All future references to "§ " or "section" are references to the Texas Government Code, unless otherwise designated.

The record before this court does not include an executed copy of the order denying Relator's motion for a jury trial. It does, however, include a copy of the trial court's order setting the matter for a hearing before the court, thereby implicitly denying Relator's motion.