# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00160-CV

---

**In re Natin Paul**

---

### ORIGINAL PROCEEDING FROM TRAVIS COUNTY

---

## M E M O R A N D U M   O P I N I O N

Relator Natin Paul has filed an emergency petition for writs of habeas corpus and mandamus challenging a contempt order issued against him by the district court. For reasons explained below, we will modify the contempt order but will otherwise deny relief.

## BACKGROUND[1]

Paul and several corporate entities that he controls are defendants in ongoing litigation with the Roy F. and JoAnn Cole Mitte Foundation, the Real Party in Interest in this case (Mitte). In that litigation, Paul and his corporate entities have been found to be jointly and severally liable to Mitte for $1,909,125.20.

On May 13, 2022, the district court issued a temporary restraining order (TRO) against Paul and his corporate entities. In the TRO, the district court noted that Paul had posted a

---

[1] Because the parties are familiar with the underlying facts of the case and its procedural history, and because those facts are recited in greater detail in this Court's earlier opinions, *see, e.g.*, *Paul v. Roy F. & JoAnn Cole Mitte Foundation*, No. 03-21-00502-CV, 2023 WL 1806101 (Tex. App.—Austin Feb. 8, 2023, no pet. h.) (mem. op.); *WC 1st & Trinity, LP v. Roy F. & JoAnn Cole Mitte Found.*, No. 03-19-00799-CV, 2021 WL 4465995 (Tex. App.—Austin Sept. 30, 2021, pet. denied) (mem. op.), we do not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it, *see* Tex. R. App. P. 47.1, 47.4.

cash deposit in the amount of $329,652.66, superseding the judgment in part, but that the corporate entities had not posted a supersedeas bond or equivalent cash deposit. The court found "that if not restrained, the judgment debtors [were] likely to dissipate or transfer assets to avoid satisfaction of the Judgment." To prevent that, the TRO prohibited Paul and his corporate entities "from dissipating or transferring any of their assets for less than fair value . . . until further order from this Court." The TRO also provided that "on the fourteenth day from entry of this Order, Defendants must each notify Ray Chester, counsel for Plaintiff, of each transfer, conveyance, or dissipation of assets in excess of $25,000 made since the entry of this Order." The TRO further specified that "[t]his injunction does not prohibit Defendants' use, transfer, conveyance, or dissipation of assets for fair value in the normal course of business," and it specifically defined "assets" to "include any property or thing of value, including tangible personal property, intangible personal property (including, but not limited to cash, cryptocurrency, accounts receivable, notes receivable, stocks, bonds, and other securities, and partnership ownership interests), and real property."

On June 10, 2022, the district court issued a "Post-Judgment Injunction Under TRAP 24.2(d)" (Injunction), which contained similar terms to those of the TRO but also specified that

> [O]n the 1st day of each month from entry of this Order, Defendants must each file a sworn report to the Court, with notice to all parties, listing each transfer, conveyance, or dissipation of assets in excess of $25,000 made over the course of the prior month, or, if applicable, that no such transfers or conveyances were made.

The Injunction provided that it "shall continue until either the Judgment is paid in full or until further order of this Court."

2

On September 2, 2022, Mitte filed a motion for show-cause order, asking that Paul "be held in civil contempt" for disobeying the Injunction. Specifically, Mitte alleged that "[n]o Defendant has filed a sworn report . . . on July 1, 2022 when the first such report under this injunction was due, or on August 1, 2022, when the second such report under this injunction was due, or on any other date." Mitte added that "[i]t stands to reason that given Mr. Paul's demonstrated failure to comply with this injunction, he is likely to dissipate or transfer assets in violation of the injunction as well. In fact, his failure to report transactions may be an effort to cover up such dissipation." Mitte concluded that "[t]o purge himself of contempt," Paul must "file sworn reports on his own personal behalf, [and] on behalf of [his corporate entities] covering the following periods: June 10, 2022-June 30, 2022; July 1, 2022-July 31, 2022, and any future calendar month period between now and the date he purges himself of contempt."

On October 4, 2022, the district court, after considering the motion, issued a show-cause order. In its order, the court noted that the motion was directed "at the disobedience of the portion of the Injunction that commands" Paul and his corporate entities to "file a sworn report to the Court, with notice to all parties, listing each transfer, conveyance, or dissipation of assets in excess of $25,000 made over the course of the prior month, or, if applicable, that no such transfers or conveyances were made." Finding that the motion was "proper, and states probable grounds for contempt," the court ordered Paul to appear before the court on November 9, 2022, "to show cause why he should not be held in contempt of Court for disobedience of the Injunction as stated above."

On November 4, 2022, Paul filed the sworn reports required by the Injunction, and he stated therein that he did not transfer, convey, or dissipate any assets in excess of $25,000 for the time periods specified in each monthly report. Paul then appeared at the November 9

3

hearing and testified as to his understanding of the Injunction's requirements and whether he had made any transfers in violation of the Injunction. Among other topics discussed at the hearing, Mitte asked Paul questions relating to a $100,000 transfer that Paul had allegedly made to a professional basketball player on June 22, 2022. Paul's counsel objected to this line of questioning, arguing that it was not relevant to the purpose of the hearing and that Paul was "entitled to see the information on which [counsel for Mitte] is relying." The district court overruled the objection, and Paul continued testifying about this and other matters.

At the conclusion of the hearing, Mitte argued that Paul should be held in civil contempt for failing to file the sworn reports. Mitte also argued that Paul should be held in criminal contempt for perjury and making the $100,000 transfer, if it was "not for fair value" in violation of the Injunction. However, Mitte added, "Our research indicates that Mr. Paul is entitled to an opportunity to have another day in court on that and present any defenses he has to that criminal contempt." To that end, Mitte had drafted a second show-cause order for the district court to sign, along with a second motion for show-cause order.

The district court announced that it was going to recess the hearing until the following week and that it would sign the show-cause order. At Mitte's request, the district court also ordered that by noon on the Wednesday before the next hearing, Paul provide Mitte with all of Paul's personal bank statements from June onward, "for the purpose of determining whether or not Mr. Paul is in contempt of court . . . . both civil and criminal, as to whether or not he has filed false statements under oath or made false statements under oath in court," and to determine "whether the reports are incorrect in stating that there [has] been no transfer, conveyance, or dissipation of assets . . . in excess of $25,000 . . . for less than fair value, which we'll require Mr. Paul to be able to determine the purpose of the transfer and the value he received in response."

4

Counsel for Mitte then produced his proposed show-cause order and revised the order in consultation with counsel for Paul. The court then made its own revisions to the order, signed and dated the order, handed the signed order to both Paul and Paul's counsel, and recessed the proceedings.

In Mitte's November 9 motion for show-cause order, Mitte argued that the court had been presented with evidence at the hearing that Paul had "in fact made at least one transfer in excess of $25,000," which was contrary to Paul's testimony that he had not made any transfer, conveyance, or dissipation of assets in excess of $25,000 since the Injunction had been in effect. According to Mitte, this evidence "established that Mr. Paul's statements in his sworn reports were false and that his testimony concerning his lack of such transfers was false. . . . The only reasonable inference is that Mr. Paul made knowingly false statements under oath and under penalty of perjury, with the intent to deceive this Court and his litigation adversary, the judgment creditor." Mitte continued,

> Mr. Paul has repeatedly flouted the authority of this Court and obstructed it in the performance of its duties. After blatantly and without excuse disobeying the Court's Injunction until days before the show-cause hearing, Mr. Paul provided the court with false reports and then compounded the issue by lying under oath. Mr. Paul's false reports violate the Injunction, which Ordered him to disclose each transfer, conveyance or dissipation of assets in excess of $25,000, and his false testimony to the Court obstructed its ability to monitor compliance with its orders. If the Court finds that Mr. Paul made false statements in either his sworn reports or his testimony at the November 9, 2022 hearing, Plaintiff requests that after notice and hearing he be found in criminal contempt and confined in the Travis County jail for a period deemed appropriate by the Court.

The motion then referenced the $100,000 transfer specifically:

> At the hearing, the Court was presented with evidence that Mr. Paul made a

5

transfer on June 22, 2022, of $100,000 to a third party. When confronted with this evidence, Mr. Paul was unable to demonstrate that the transfer was made for fair value. Thus, the transfer in question violated the express terms of the Injunction. If the Court finds that Mr. Paul made a transfer in disobedience of the Injunction, Plaintiff requests that after notice and hearing he be found in criminal contempt and confined in the Travis County jail for a period deemed appropriate by the Court.

The district court's November 9 show-cause order described Mitte's motion as seeking to have Paul "held in and punished for contempt of court for": (1) disobedience of the Injunction in making false statements in his sworn reports, (2) making false testimony under oath, and (3) disobedience of the Injunction in making a prohibited transfer for less than fair value. The court then went on to summarize the allegations in greater detail:

> Specifically, with respect to the Injunction, Mr. Paul was commanded to, on the 1st day of each month from entry of the June 10, 2022 Injunction until the Judgment is paid in full or the injunction is lifted by further order of the Court, file a sworn report to the Court, with notice to all parties, listing each transfer, conveyance, or dissipation of assets in excess of $25,000 made over the course of the prior month, or, if applicable, that no such transfers or conveyances were made. In Mr. Paul's sworn reports submitted to this Court, Plaintiff alleges that Mr. Paul made false statements.

> Further, in the November 9, 2022 hearing before this Court, Mr. Paul offered sworn testimony that in the time period that the Injunction has been in effect he had not made any transfer, conveyance, or dissipation of assets in excess of $25,000. Plaintiff alleges that the sworn statement appears to be false.

> Finally, Plaintiff alleges that Mr. Paul made a transfer of $100,000 for less than fair value on or about June 22, 2022 in disobedience of the Injunction.

Based on these allegations, the court ordered Paul to appear in person on November 17, 2022, "to show cause why he should not be held in contempt of Court for disobedience of the Injunction and making false testimony under oath to the Court."

6

At the November 17 hearing, Paul provided additional testimony regarding the $100,000 transfer. Paul acknowledged making a payment of $100,000 to an NBA player but claimed that he did not know until the November 9 hearing that failing to report this payment violated the Injunction. Paul also testified that he did not personally owe this player money but that one of his companies did.

The district court admitted additional evidence at the hearing relating to Paul's bank accounts. Paul testified that he had only two personal bank accounts, a Chase account with a balance of $5,800 at the time of the hearing, and an RBC Wealth account with a balance of $0. However, Mitte introduced evidence showing that Paul had received $10 million from the closing of a sale in bankruptcy court in March 2022 and that the sale had also resulted in approximately $100 million being transferred to a Horizon Bank account in the name of "Travis County Exchange Corporation as qualified intermediary for Natin Paul." Paul denied that this bank account was one of his personal accounts.

Mitte also questioned Paul about a transfer of $963,323.18 from the Horizon Bank account to Westlake Industries, another company owned by Paul. When asked if he had any explanation for this transaction, Paul testified, "I'm not familiar with—one, I didn't come here prepared for Westlake Industries, LLC." Then, after being shown a bank statement showing other transfers to Westlake Industries and in response to a question about those transfers, Paul testified, "I wouldn't have knowledge on probably any of these transactions without having reviewed them as I—you know, I don't handle the accounting for Westlake Industries and have not reviewed this document prior to today." Copies of bank statements for Westlake Industries were admitted into evidence, and one of the statements showed a transfer of $963,323.18 from

7

"Horizon Bank . . . B/O [By Order of] Paul, Natin" to Westlake Industries, made on June 10, 2022, the date the district court signed the Injunction.

At the conclusion of the hearing, the district court took the matter under advisement. On March 10, 2023, the district court issued an order of contempt and commitment for Paul, finding him in both civil and criminal contempt. Regarding the allegations of criminal contempt, which are the subject of this proceeding,[2] the court found that Paul committed eight violations:

> Violation 1: Mr. Paul made a transfer to an NBA player of $100,000 on June 22, 2022, but in the late-filed report for June 2022, Mr. Paul intentionally failed to report the transfer. After being confronted with evidence of this transfer at the November 9, 2022, hearing, Mr. Paul equivocated, claiming not to remember such transfer, but then later reported the transaction on an amended report. To the extent that Mr. Paul made equivocal testimony concerning his lack of memory or awareness of the $100,000 transfer to the NBA player, the Court finds that this testimony is not credible.

> Violation 2: The $100,000 transfer was not made for fair value. Mr. Paul did not receive anything of value from the NBA player and Mr. Paul admitted he did not personally owe the NBA player any money. Mr. Paul was aware that the $100,000 transfer violated the Injunction, as a prohibited transfer not for fair value.

> Violation 3: Mr. Paul also ordered $963,323.18 of his funds (held by an escrow agent) to be transferred to a wholly owned business of his, Westlake Industries, on June 10, 2022, the date the Injunction was signed, but intentionally failed to report the transfer. This failure violated the Injunction, and if made prior to the signing of the Injunction, violated the Temporary Restraining Order.

> Violation 4: The $963,323.18 transfer was also not made for fair value. The Court's finding is based on the timing of the transfer and the fact that Mr. Paul omitted it from his sworn report and then testified falsely concerning the transfer

[2] Paul does not challenge the portions of the order involving civil contempt in this proceeding and thus we need not discuss them here. *See* Tex. R. App. P. 47.1.

8

at the November 17 hearing.  Mr. Paul also failed to provide credible evidence that the transfer was for fair value or that the Injunction did not require it to be reported.  The Court finds that Mr. Paul's testimony concerning this transfer was not credible.  The Court finds that Mr. Paul was aware that the $963,323.18 transfer violated the Injunction (and if made before the Injunction was signed, violated the earlier Temporary Restraining Order) as a prohibited transfer not for fair value.

Violation 5: Mr. Paul failed to produce complete records of his bank accounts at the November 17, 2022, hearing after being ordered to do so by the Court.

Violation 6: Filing a false sworn report, specifically stating "under penalty of perjury," for June 2022 that no transfers over $25,000 were made that month when in fact at least two such transfers were made;

Violation 7: Falsely testifying at the November 9, 2022 hearing that he made no transfers over $25,000 during June 2022; and

Violation 8: Falsely testifying at the November 17, 2022, hearing concerning the number of bank accounts in his name or under his personal control.

Finding that Paul was "in contempt for each of the eight separate violations enumerated above," the court further concluded that:

Natin Paul's $963,323.18 transfer on June 10, 2022, and $100,000 transfer on June 22, 2022, violated the Injunction, and with respect to the June 10, 2022 transfer, if made prior to the signing of the Injunction, violated the Temporary Restraining Order.  Further those transfers by Natin Paul were intentional.  The violations of the Injunction and the multiple acts of false testimony noted herein each constitute criminal contempt of court.

The court ordered that "[a]s punishment for each of the eight separate acts of criminal contempt, Mr. Paul shall be confined to the Travis County Jail, commencing on March 15, 2023, for a term of 10 days in jail.  Each period of confinement shall run concurrently."

9

On March 13, Paul filed an emergency motion for temporary relief and this emergency petition for writs of habeas corpus and mandamus, challenging the portions of the order involving criminal contempt. We granted the emergency motion to consider the merits of Paul's petition. *See In re Paul*, No. 03-23-00160-CV, 2023 WL 2505302 (Tex. App.—Austin Mar. 14, 2023, orig. proceeding) (per curiam order).

## STANDARD OF REVIEW

"Because contempt orders are not appealable, they are reviewable only by writ of mandamus or habeas corpus." *In re Janson*, 614 S.W.3d 724, 727 (Tex. 2020). To be entitled to mandamus relief, a relator must show that the district court clearly abused its discretion, i.e., its decision was "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *In re State Farm Lloyds*, 520 S.W.3d 595, 604 (Tex. 2017) (orig. proceeding). To be entitled to habeas relief, the trial court's contempt order must be void, either because it was beyond the power of the court to issue it or because it deprived the relator of his liberty without due process of law. *In re Office of Att'y Gen.*, 422 S.W.3d 623, 628 (Tex. 2013); *Ex parte Barnett*, 600 S.W.2d 252, 254 (Tex. 1980).

## GOVERNING LAW

Contempt is "broadly defined" as "disobedience to or disrespect of a court by acting in opposition to its authority." *In re Reece*, 341 S.W.3d 360, 364 (Tex. 2011) (orig. proceeding) (citing *Ex parte Chambers*, 898 S.W.2d 257, 259 (Tex. 1995) (orig. proceeding)). "[C]ontempt is a broad and inherent power of a court," but that power is not unlimited. *Id*. A person accused of contempt is entitled to due process of law, although the amount of due process to which a person is entitled depends on the nature of the contempt alleged. *See id*.

10

"Contempt may occur in the presence of a court (direct contempt), or outside the court's presence (constructive contempt)." *Id*. at 365 (citing *Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex.1979) (orig. proceeding)); *In re Hesse*, 552 S.W.3d 893, 897 (Tex. App.—Amarillo 2018, orig. proceeding). In a direct contempt proceeding, "the court has direct knowledge of the facts which constitute the contemptuous conduct." *Hesse*, 552 S.W.3d at 897. "The essence of direct contempt in this situation is that the offending conduct obstructs or tends to obstruct the proper functioning of the court and the administration of justice." *Id*. (citing *Ex parte Daniels*, 722 S.W.2d 707, 708 (Tex. Crim. App. 1987)).

"By way of contrast, constructive or indirect contempt involves actions that occur outside the presence of the court which require testimony or the production of evidence necessary to establish the occurrence of the allegedly contemptuous act." *Id*. (citing *Chambers*, 898 S.W.2d at 259). "Contrary to acts of direct contempt, constructive contempt does not generally relate to acts which interfere with or interrupt courtroom proceedings but is most often characterized by a dispute between the parties to the litigation concerning the enforcement of a court order or directive affecting the subject matter of the pending litigation." *Id*.

"The distinction between direct and constructive contempt is important because due process requires different procedures for the adjudication of contempt and the imposition of sanctions depending on the character of the contemptuous act and the nature of the sanctions sought or imposed." *Id*. "[A] person guilty of direct contempt is not entitled to the same procedural safeguards as someone accused of constructive contempt." *Id*. at 897-98. "In cases of constructive contempt, where there are factual issues regarding the allegedly contemptuous act, due process requires that the accused be afforded greater procedural rights." *Id*. at 898. "For example, due process requires that the accused be advised of the nature and occurrence of the

11

alleged contemptuous acts and have a reasonable opportunity to address those charges by way of defense or explanation, including the right to the assistance of counsel." *Id*.

"Contempt is further classified into either civil or criminal contempt." *Reece*, 341 S.W.3d at 365. "[C]ivil contempt is 'remedial and coercive in nature' . . . while criminal contempt is punitive in nature—'the contemnor is being punished for some completed act which affronted the dignity and authority of the court.'" *Id*. (quoting *Ex parte Werblud*, 536 S.W.2d 542, 545 (Tex. 1976) (orig. proceeding)). "Criminal contempt is a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both." *Bloom v. Illinois*, 391 U.S. 194, 201 (1968). As such, "[m]any constitutional rights are accorded criminal contemnors," *Werblud*, 536 S.W.2d at 547, including the right to "full and unambiguous notice of the accusation of contempt" charged, *Ex parte Adell*, 769 S.W.2d 521, 522 (Tex. 1989). "A contempt order rendered without such adequate notification is void." *In re Davis*, 305 S.W.3d 326, 330 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding); *see Ex parte Carney*, 903 S.W.2d 345, 346-47 (Tex. 1995).

**DISCUSSION**

In his petition, Paul raises several arguments as to why he believes the criminal contempt portions of the order are void. He argues that (1) opposing counsel improperly served as "prosecutor" in the contempt proceedings; (2) the district court was biased against him; (3) he did not have sufficient notice of the allegations against him; (4) there is insufficient evidence that he engaged in "any act" of criminal contempt; (5) there is insufficient evidence that he committed perjury; (6) the district court failed to provide notice and an additional hearing for the perjury that Paul allegedly committed at the November 17 hearing; and (7) the district court

12

failed to conduct a separate sentencing hearing before imposing punishment, which Paul claims denied him "the right to the assistance of counsel, the right to presence, and the right of allocution." We conclude that most of these contentions do not entitle Paul to any relief, and we need not discuss those contentions. *See* Tex. R. App. P. 52.8(d). However, we agree, in part, with Paul's argument that he did not have sufficient notice of the allegations to be tried, but only with respect to the allegations that resulted in Violations 3, 4, and part of Violation 6.

In Violation 3, the district court punished Paul for failing to report the $963,323.18 transfer to Westlake Industries. In Violation 4, the court punished Paul for making that $963,323.18 transfer "not for fair value." And in Violation 6, the court punished Paul for "filing a false sworn report, specifically stating 'under penalty of perjury,' for June 2022 that no transfers over $25,000 were made that month when in fact at least two such transfers were made," the $100,000 transfer to the NBA player and the $963,323.18 transfer to Westlake Industries. These were violations of either the TRO or the Injunction that occurred outside the court's presence and thus involved constructive criminal contempt. Accordingly, before Paul could be held in contempt for these violations, due process required that Paul receive "full and unambiguous notice" of these violations. *See Chambers*, 898 S.W.2d at 262; *Adell*, 769 S.W.2d at 521.

The notice required in cases of constructive criminal contempt "should be by show cause order or equivalent legal process personally served on the alleged contemnor, and it should state when, how and by what means the defendant has been guilty of contempt." *Ex parte Vetterick*, 744 S.W.2d 598, 599 (Tex. 1988) (citing *Gordon*, 584 S.W.2d at 688; *Ex parte Edgerly*, 441 S.W.2d 514, 516 (Tex. 1969)). Reviewing courts look to both the show-cause order and the motion for contempt filed by the complaining party to determine if sufficient notice

13

has been provided. *See id*.; *Ex parte Jimenez*, 737 S.W.2d 358, 360 (Tex. App.—San Antonio 1987, orig. proceeding) (per curiam); *Ex parte Gray*, 654 S.W.2d 68, 70 (Tex. App.—Eastland 1983, orig. proceeding).

Here, there is nothing in either Mitte's motions for show-cause order or the show-cause orders themselves that serve to notify Paul that he is being accused of making a $963,323.18 transfer for less than fair value, failing to report that transfer, or filing a false report stating that he did not make that transfer. The first time this transfer was mentioned was the November 17, 2022 show-cause hearing, when Mitte questioned Paul about the transfer.

This lack of notice is especially apparent when considering the notice that was provided for the $100,000 transfer. When that transfer was discussed at the November 9 show-cause hearing, counsel for Mitte acknowledged that Paul was "entitled to an opportunity to have another day in court on that and present any defenses he has to that criminal contempt," and the district court recessed the hearing to give Paul an opportunity to defend against the charge. Mitte's November 9 motion for show-cause order referenced both the amount of the transfer and the date on which it was made, and the show-cause order did the same. In contrast, no notice at all was provided regarding the $963,323.18 transfer. Consequently, the portions of the order that punish Paul for that particular transfer are void. *See In re Rowe*, 113 S.W.3d 749, 752-53 (Tex. App.—Austin 2003, orig. proceeding); *see also In re Powers*, No. 01-21-00466-CR, 2022 WL 16640631, at *4 (Tex. App.—Houston [1st Dist.] Nov. 3, 2022, orig. proceeding) (mem. op.).

"If a portion of a contempt order is void while valid in all other respects, an appellate court may strike the offending portion and otherwise deny relief." *In re Anascavage*, 131 S.W.3d 108, 112 (Tex. App.—San Antonio 2004, orig. proceeding); *In re Watson*,

14

108 S.W.3d 531, 533 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding); *see In re Mayorga*, 538 S.W.3d 174, 179 (Tex. App.—El Paso 2017, orig. proceeding); *see also In re Patillo*, 32 S.W.3d 907, 909 (Tex. App.—Corpus Christi-Edinburg 2000, orig. proceeding) ("Where a trial court lists each failure to comply with an order separately and assesses a separate punishment for each failure to comply, only the invalid portion of the contempt order is void and the remainder of the contempt order is enforceable."). Accordingly, we strike Violations 3 and 4 in their entirety from the contempt order and modify Violation 6 to reflect that Paul filed a false report with respect to "at least one such transfer" instead of "at least two such transfers."[3] We also modify the order's Finding of Fact 16 to reflect that the district court finds Paul in contempt for "six" rather than "eight" separate violations,[4] strike the references to the $963,323.18 transfer in the order's Conclusion of Law 2 involving criminal contempt,[5] and modify the punishment

---

[3] Thus, Violation 6 shall read:

> Filing a false sworn report, specifically stating "under penalty of perjury," for June 2022 that no transfers over $25,000 were made that month when in fact at least one such transfer was made.

[4] Thus, the Finding of Fact shall read:

> The Court specifically FINDS that Natin Paul is in contempt for each of the six separate violations enumerated above.

[5] Thus, the Conclusion of Law shall read:

> Natin Paul's $100,000 transfer on June 22, 2022, violated the Injunction. Further that transfer by Natin Paul was intentional. The violation of the Injunction and the multiple acts of false testimony noted herein each constitute criminal contempt of court.

portion of the order to reflect that Paul shall serve punishment for "six" rather than "eight" separate acts of criminal contempt concurrently.[6]

## CONCLUSION

Having modified the order to remove the invalid portions of the order, we deny Paul's petition.[7] *See* Tex. R. App. P. 52.8(a). We also vacate our March 14, 2023 temporary order staying the district court's order and remand this case to the district court to issue an updated order of commitment.

_____

Gisela D. Triana, Justice

Before Chief Justice Byrne, Justices Triana and Theofanis

Filed: March 31, 2023

---

[6] Thus, the punishment portion of the order shall read:

> As punishment for each of the six separate acts of criminal contempt, Mr. Paul shall be confined to the Travis County Jail, commencing on [date], for a term of 10 days in jail. Each period of confinement shall run concurrently.

[7] Paul does not challenge the portions of the order involving civil contempt in this proceeding, and thus those portions of the order are not affected by this decision, including the references to the $963,323.18 transfer in the civil contempt portions of the order.