

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-23-00287-CV

---

IN RE ANNA MCCUTCHEON, RELATOR

---

Original Proceeding
Arising From Proceedings Before the County Court at Law No. 2
Lubbock, County, Texas
Trial Court No. 2016-519,187, Honorable Tom W. Brummett, Presiding

---

September 26, 2023

## MEMORANDUM OPINION

### Before PARKER and DOSS and YARBROUGH, JJ.

In this original proceeding we determine if the trial court abused its discretion in holding the relator, Anna McCutcheon, in contempt for disobeying the trial court's possession orders. McCutcheon raises the following issues: (1) the contempt order is void because it violated McCutcheon's due process rights; (2) the motion for enforcement did not meet the statutory requirements; (3) the possession order provisions are too vague to be enforced by contempt; (4) there is insufficient evidence of McCutcheon's willful intent to violate the possession order; and (5) the award of attorney's fees is void.

Because we conclude the trial court did not abuse its discretion, we deny her petition for writ of mandamus.

## BACKGROUND

Anna McCutcheon is the mother of T.C. and H.C.[1]  Real party in interest, Christopher Caddel, is the father.  Caddel and McCutcheon are divorced, and McCutcheon and the children reside in Lubbock, Texas, while Caddel resides in Victoria, Texas.  On March 10, 2023, Caddel was entitled to take possession of the children at their school based upon the following language in the possession order issued in the divorce:

\*\*\*

> Spring Vacation in All Years – Every year, beginning at the time school is regularly dismissed or 3:30 p.m., as applicable, on the day the child is dismissed from school for the school's spring vacation and ending at 6:00 p.m. on the day before school resumes after that vacation.

\*\*\*

> If CHRISTOPHER LOUIS CADDEL's period of possession is to begin when school is dismissed, ANNA CADDEL MCCUTCHEON is ORDERED to surrender the child to CHRISTOPHER LOUIS CADDEL at the beginning of each period of CHRISTOPHER LOUIS CADDEL's possession at the school the child attends.

\*\*\*

Just before the dismissal of school at 3:25 p.m. on the Friday before Spring Break 2023, Caddel went to the children's school to pick them up.  School administrators paged the children over the intercom to come to the front office.  H.C. apparently heard the

---

[1] To protect their privacy, we refer to the children by their initials.

intercom page but did not go to the front office. T.C. responded to the page and went to the front office where she saw her father, but then asked if she could go back to her classroom to pick up something she forgot. One of T.C.'s teachers saw her after she left the front office. The dismissal bell rang, and they were shortly joined by H.C. The teacher testified both children stated they did not wish to go with their father for Spring Break, and H.C. suggested they could meet their mother, who was picking up their half-sister from first grade.[2]

The teacher took T.C. and H.C. across the street to the pickup location where McCutcheon was with their younger half-sibling. Upon seeing McCutcheon, T.C.'s teacher asked McCutcheon if she could take the children, and she agreed. Caddel, meanwhile, waited in the front office for the children, and when they did not show up, he asked the principal where the children were. The principal confirmed the children had left with their mother, and Caddel drove to McCutcheon's house.

When McCutcheon reached home, she found Caddel in his vehicle parked in front of her house. McCutcheon decided to keep driving, picked up an infant half-sibling from daycare, and then left all four children at a friend's house before returning home. Caddel at some point called the police and observed McCutcheon drive into her garage. Caddel remained in his vehicle and exchanged text messages with McCutcheon, demanding she relinquish the children to him under the possession order and warning her the police were on their way. McCutcheon responded the issue was between Caddel and the children, implying the children did not wish to go with him, and she had done "all I can." When the

_____

[2] The children's half-siblings are not subject to the possession order.

3

police arrived, McCutcheon was leaving to retrieve the children. The responding officer flagged down McCutcheon in her driveway and asked her for her side of the situation. She explained the children were at her friend's house and did not wish to go with their father. The officer returned to Caddel and told him he would not be getting the children. Caddel left McCutcheon's home and returned to Victoria.

Following the incident, Caddel first filed a writ of habeas corpus for the return of the children and then filed a motion to find McCutcheon in contempt. The hearing for contempt was held before an associate judge, who, at the conclusion of the hearing, recommended McCutcheon be jailed for three days and pay Caddel's attorney's fees and court costs. Five days later, the trial court incorporated the recommendations into a written order of contempt, but suspended the jail commitment for twelve months upon the following conditions:

- McCutcheon "comply with the court order"; and

- McCutcheon paid Caddel's attorney's fees and court costs.

No order of commitment was issued by the trial court. McCutcheon requested findings of fact and conclusions of law, and after receiving the findings from the trial court, filed this petition for writ of mandamus.

## STANDARD OF REVIEW

"Because contempt orders are not appealable, they are reviewable only by writ of mandamus or habeas corpus." *In re Janson*, 614 S.W.3d 724, 727 (Tex. 2020) (orig. proceeding) (citation omitted). "When the contemnor is not jailed, the proper vehicle to

4

challenge a contempt order is a writ of mandamus, which requires the contemnor to show that the trial court abused its discretion." *Id.* Mandamus relief is appropriate when a petitioner demonstrates a clear abuse of discretion and has no adequate remedy by appeal. *In re Geomet Recycling, LLC*, 578 S.W.3d 82, 91 (Tex. 2019) (orig. proceeding) (citations omitted). When a trial court fails to analyze or apply the law correctly, it has clearly abused its discretion. *In re Sherwin-Williams Co.*, 668 S.W.3d 368, 370 (Tex. 2023) (orig. proceeding) (internal quotations omitted).

**ANALYSIS**

### *Contempt Order is not Void*

McCutcheon argues the contempt order is void because: (1) the delay between the date of the associate judge's recommendation and the trial court's rendering of the contempt order was more than four days; (2) the "comply with the court order" provision of the suspension portion of the contempt order is ambiguous and does not comply with the Texas Family Code; and (3) the contempt order does not state McCutcheon committed her violations "willfully." We disagree.

In support of her sub-issue (1), McCutcheon cites *In re Stewart*, No. 07-22-00079-CV, 2022 Tex. App. LEXIS 2820, at *4 (Tex. App.—Amarillo Apr. 27, 2022, orig. proceeding). Under *Stewart*, McCutcheon argues, the contempt order is void because the delay of more than four days between the signing of recommendations and the trial court's rendering of the written order per se violated her due process rights.

The trial court in *Stewart* held a father in contempt for violating the geographic restriction in a custody order. It issued a written order suspending the contempt order

5

upon payment of a bond, and then reduced its initial oral contempt finding to a written judgment two weeks later. No order of commitment was issued by the trial court. *Id.* at *2–3. We reversed the trial court's contempt order as void because the delay between the oral pronouncement of contempt by the trial court and the rendering of the written order was more than four days. *Id.* at *4. We also noted the lack of an order of commitment from the trial court, despite requiring the father to pay a bond to stay out of jail. *Id.*

Here, unlike in *Stewart*, the trial court did not conduct the initial hearing for contempt—the associate judge did. The associate judge made a written recommendation on the day of the hearing. Although he proposed enforcement by contempt, the associate judge's recommendation did not constitute an enforceable order of the trial court until it was adopted by the trial court. TEX. FAM. CODE ANN. § 201.1041(b). McCutcheon's individual freedom only came into jeopardy once the trial court rendered its judgment, not when the associate judge made his recommendations. Five days later, the trial court's executed written contempt order reflected many of the recommendations of the associate judge, but it did not expressly adopt the recommendations and it also modified them by including suspension of the recommended commitment. Readily distinguishable from *Stewart*, in this case there was no prior oral pronouncement of contempt by the trial court. As a result, there was no delay between ordering contempt and reducing the order to writing; it occurred in the same act by the trial court—the rendering of the written order of

6

contempt. Under these circumstances, we find *Stewart* to be inapplicable, and we do not find any due process violation from the rendering of the contempt order.[3]

Regarding her sub-issue (2), McCutcheon argues the condition of the suspension of commitment requiring her to "comply with the court order" is ambiguous because: (a) it is not a listed condition for community supervision under Texas Family Code Section 157.211; and (b) the requirement is overly broad, encompassing aspects of the divorce decree between the parties unrelated to the possession orders. McCutcheon argues, in cases not involving child support payments, Section 157.211 limits the trial court to assessing court costs and attorney's fees as conditions for suspension of commitment for each contempt finding. TEX. FAM. CODE ANN. § 157.211(5). Under her rubric, McCutcheon would merely have her commitment suspended by paying attorney's fees and court costs and would then be free to violate the possession orders anew. This belies the very nature and purpose of the courts' *inherent* power of contempt, which is to coerce a noncompliant party into compliance with its orders. *In re Hesse*, 552 S.W.3d 893, 896–99 (Tex. App.—Amarillo 2018, orig. proceeding); *see also In re Office of the AG*, 422 S.W.3d 623, 627 (Tex. 2013) (orig. proceeding). The "comply with the court order" condition of the suspension of her commitment ensures McCutcheon's future compliance and, with sufficient incentive, prevents additional and repeated violations. Also, Section 157.211 states the "the terms and conditions of community supervision *may* include" the listed items. TEX. FAM. CODE ANN. § 157.211 (emphasis added). The word "may" in

---

[3] McCutcheon also points out the trial court did not issue an order of commitment but does not make any argument regarding the effect of the lack of commitment order. However, unlike *Stewart*, in this case, McCutcheon's commitment was suspended from the moment the trial court rendered its contempt order, and no payment of bond was required by McCutcheon to acquire freedom. Further, the trial court had no reason to issue an order of commitment when McCutcheon had not yet violated the conditions of the suspension of her commitment.

statutory construction "creates discretionary authority or grants permissive power." TEX. GOV'T CODE ANN. § 311.016. Read in context, the community supervision statute merely suggests the actions a trial court may take; it does not provide an exclusive or exhaustive list of those remedies displacing the inherent contempt power of courts.[4]

Addressing the second part of her sub-issue (2), "comply with the court order" is not ambiguous. The contempt order refers to the "violations of the order signed July 12, 2019," which is the divorce decree between the parties. There could be no other "order" to which the contempt order refers. McCutcheon's argument the order becomes uncertain when modified is also unavailing because those modifications would necessarily be of the "order signed on July 12, 2019." McCutcheon's concern she will inadvertently violate part of the divorce decree unrelated to possession of the children does not make the order ambiguous. To the contrary, as stated above, the trial court's inherent contempt power allows it to coerce compliance by McCutcheon for the entire order, not just the possession provisions. *Supra*.

For her sub-issue (3), McCutcheon does not provide any authority for her contention the contempt order required a finding her violations were "willful." Nonetheless, "[n]oncompliance with an unambiguous order will raise an inference that the noncompliance was willful." *Ex parte Chambers*, 898 S.W.2d 257, 261 (Tex. 1995). As we discuss further below, the possession orders were unambiguous, and the trial court's

---

[4] At least two of our sister courts have found continued compliance with court orders to be an acceptable condition of a suspension of commitment. *In re Miller*, No. 09-18-00253-CV, 2018 Tex. App. LEXIS 7126, at *3 (Tex. App.—Beaumont Aug. 30, 2018, orig. proceeding) (condition of suspension included surrender of children pursuant to court orders); *In re Quintanilla*, No. 13-17-00470-CV, 2017 Tex. App. LEXIS 8285, at *2 (Tex. App.—Corpus Christi Aug. 29, 2017, orig. proceeding) (condition of suspension included paying child support as ordered); *but cf. In re Pierre*, 50 S.W.3d 554, 558 (Tex. App.— El Paso 2001, orig. proceeding) (finding list under Section 157.211 exhaustive).

8

finding McCutcheon violated the possession order allows us to infer she violated the order "willfully."

We find the contempt order is not void. McCutcheon's first issue is overruled.

***Caddel's Motion for Enforcement was not Vague***

McCutcheon's second issue argues the motion for enforcement did not meet the statutory requirements because it was vague. She complains of the following language in the motion:

> On March 10, 2023, Respondent Anna McCutcheon, failed and refused to surrender the children to Petitioner, Christopher Caddel, at the time the children's school dismissed for the spring vacation at the school where the children attend. Respondent further failed and refused to surrender the children to Petitioner, Christopher Caddel, at the residence of Respondent after Respondent picked the children up from the school where the children attend.

McCutcheon argues the above language lacks specificity with respect to the requirement to state "the date, place, and, if applicable, the time of each occasion of the respondent's failure to comply with the order." TEX. FAM. CODE ANN. § 156.002(c). We find this argument unmeritorious. From a plain reading of the motion, it is apparent the conduct complained of is McCutcheon's failure to surrender the children to Caddel at their school on March 10, 2023.

Moreover, McCutcheon did not object to the motion, either in writing or at the hearing. In failing to object, she failed to preserve the issue for appeal. TEX. R. APP. P. 33.1. We overrule her second issue.

***Possession Order Provisions not Vague***

In her third issue, McCutcheon complains the possession orders at issue are too vague to be enforceable. She complains specifically of the following language: ". . . beginning at the time school is regularly dismissed or 3:30 p.m., as applicable . . . ." She argues this language did not "delineate whether Caddel was to pick the children up at regular dismissal time or at 3:30 p.m." and the parties cannot "determine which time was 'applicable.'" Again, we find her argument is without merit.

Although not ideally drafted, a plain reading of the provision yields only one unambiguous interpretation: Caddel could pick up the children at the earlier of 3:30 p.m. or the regular dismissal time of the school. The provision is drafted as a "catch all" to account for different dismissal times at different schools the children may attend.[5] But, again, McCutcheon did not object or argue at the trial court the provision is vague, and therefore she did not preserve the issue for appeal. McCutcheon's third issue is overruled.[6]

---

[5] "The order need not be full of superfluous terms and specifications adequate to counter any flight of fancy a contemnor may imagine in order to declare it vague." *In re Janson*, 614 S.W.3d at 727–28 (quoting *Ex parte Chambers*, 898 S.W.2d at 260).

[6] McCutcheon also argues Caddel attempted to pick up the children early from school without authority. This is because he requested the children be paged to come to the front office at 3:25 p.m. instead of 3:30 p.m. First, being five minutes early is a distinction without meaning; and second, at 3:30 p.m., the record demonstrates McCutcheon was told by the children their father was in the front office and did not want to go with him. Instead of taking the children to the front office or calling Caddel to pick them up, McCutcheon decided to drive the children to a friend's house, despite being fully aware of the possession order and Caddel's right to possession at the time.

***Evidence Demonstrates Willful Intent to Violate Orders***

McCutcheon raises as her fourth issue the sufficiency of the evidence of her willful intent to violate the possession orders. "Noncompliance with an unambiguous order will raise an inference that the noncompliance was willful." *Ex parte Chambers*, 898 S.W.2d at 261. Further, intent may be established by circumstantial evidence alone. *Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021) (citations omitted); *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) (citation omitted).

In this case, the trial court found:

- Caddel attempted to pick up the children at their school at dismissal time on March 10, 2023;

- McCutcheon took the children from the school without notifying Caddel;

- Caddel went to McCutcheon's home to pick up the children; and

- McCutcheon left the children at a friend's house and did not present the children to Caddel at her home.

In addition to these findings, the record also demonstrates:

- McCutcheon saw the children during pick up and did not attempt to deliver the children back to the front office at the school;

- she left the school with the children and did not contact or notify Caddel that she was doing so;

- despite seeing Caddel parked in front of her home after picking up the children, she continued to drive to a friend's house and then left them there; and

- she made no effort to contact Caddel regarding coordinating delivery of the children.

11

The trial court, as the factfinder, was free to judge the credibility of all the witnesses in this matter. Even giving McCutcheon the benefit of the doubt that she did not intend to take the children from the school on March 10, 2023, and fully expected them to go with their father, she nevertheless took them when the opportunity presented itself without any attempt to coordinate with Caddel. The trial court was free to infer from these circumstances McCutcheon willfully intended to violate the possession order of the court when she saw her children at their school before Spring Break.

We find sufficient evidence to establish McCutcheon's willful intent to violate the possession order. McCutcheon's fourth issue is overruled.

### *Attorney's Fees not Void*

In her final issue, McCutcheon argues the award of attorney's fees was error because Caddel's attorney failed to segregate the attorney's fees. Particularly, she contends the award of fees did not segregate Caddel's attorney's fees for the enforcement action from those for modification of the custody order. She also contends Caddel did not introduce sufficient evidence the attorney's fees were reasonable.

When reviewing a trial court's award of attorney's fees, we must ensure the record contains sufficient evidence to support such an award. *Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 354 (Tex. 2020) (citing *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 505 (Tex. 2019)). The party seeking attorney's fees bears the burden of proof and must supply enough facts to support the reasonableness of the amount awarded. *Yowell,* 620 S.W.3d at 354 (citing *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 762–63 (Tex. 2012)). If there is insufficient evidence in the record to uphold the trial

12

court's award of those fees, we must reverse.  *Yowell,* 620 S.W.3d at 354 (citing *El Apple*, 370 S.W.3d at 763–64).  "Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Webb v. Dynamic Jmc Builders*, No. 07-22-00247-CV, 2023 Tex. App. LEXIS 4536, at *10 (Tex. App.—Amarillo June 27, 2023, no pet.) (mem. op.) (citing *Rohrmoos Venture*, 578 S.W.3d at 498).  Without the details regarding the work done, time spent on tasks, and how fees were calculated, attorney testimony lacks the substance required to uphold a fee award.  *Rohrmoos Venture*, 578 S.W.3d at 505.

At the hearing, Caddel's attorney did not present billing statements and only testified as to her attorney's fees.  The attorney's testimony included: her billing rate, the particular tasks she performed, the amount of time she spent on each task, and the total amount of fees based on multiplying her billing rate by the number of hours worked.  The tasks identified by the attorney included preparation of an initial writ of habeas corpus and preparations for the enforcement hearing.  The attorney did not identify any time spent preparing responses to the motion for modification, and based upon her testimony, the fees were already segregated from the work performed for the modification.  Caddel's attorney concluded her testimony by stating the services she provided "were necessary to file to represent [Caddel] for the enforcement of his possession and access to the

children." When asked by the associate judge whether there were any objections to the attorney's fees testimony, McCutcheon's attorney simply replied, "No. Your Honor."[7]

Caddel's attorney presented sufficient evidence of attorney's fees for the trial court to perform the required lodestar analysis under *Rohrmoos Venture* and determine whether the fees were reasonable and necessary. We overrule McCutcheon's fifth issue.

## CONCLUSION

We find the trial court did not abuse its discretion in rendering its contempt order. Accordingly, we deny the petition for writ of mandamus.

Alex Yarbrough
Justice

---

[7]Additionally, review of the record reveals it was McCutcheon, not Caddel, who filed a request for a modification of the possession orders after Caddel filed his motion for contempt. It would appear the modification was presented defensively to the motion for enforcement, and therefore any fees incurred from the hearing on both the modification and enforcement were "so intertwined that they need not be segregated." *Transcor Astra Grp. S.A. v. Petrobras Am. Inc.*, 650 S.W.3d 462, 482 (Tex. 2022) (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313–14 (Tex. 2006).

14